**COMMONWEALTH of Kentucky, Movant,**

v.

**Edward GRIFFIN, Respondent.**

Supreme Court of Kentucky.

July 7, 1981.

Rehearing Denied Nov. 3, 1981.

Steven L. Beshear, Atty. Gen., Larry S. Roberts, Commonwealth's Atty. Sp. Asst. Atty. Gen., Lexington, Carl Miller, Asst. Atty. Gen., Frankfort, for movant.

Jack Emory Farley, Public Advocate, William M. Radigan, Asst. Public Defender, Frankfort, for respondent.

STEPHENSON, Justice.

The trial court found Edward Griffin incompetent to stand trial. The Court of Appeals affirmed with one judge dissenting. We granted discretionary review, 609 S.W.2d 366, and reverse the Court of Appeals.

Edward Griffin was indicted in 1973 for the offenses of rape, armed robbery, unlawful imprisonment and as an habitual criminal. In 1974, prior to trial, he was ordered to Central State Hospital for examination to determine his competency to stand trial. He escaped from that institution and later that year was arrested in Massachusetts as a fugitive from justice and was admitted to a state hospital in Massachusetts where he remained until 1978. In October 1978, he was extradited to Kentucky and was committed to the Forensic Psychiatry Unit for evaluation. He was treated at this institution until he was returned to Fayette County in June 1979. A hearing was held by the trial court in August 1979 for the purpose of determining whether Griffin was competent to stand trial on the indictment.

At the conclusion of the hearing the trial court made the following pertinent findings of fact and conclusions of law:

5. Mr. Griffin is mentally ill and suffers from paranoid schizophrenia with fixed delusional beliefs. He is extremely dangerous to himself and to others.

6. Mr. Griffin suffers from delusional thinking. He has deeply disturbed thought processes which results in his thoughts and actions being based upon false premises.

7. For the period of time in 1973 during which the alleged crimes occurred, Mr. Griffin has delusional thoughts of being employed by the FBI and being a victim of a plot by John Y. Brown, Jr. and others to get him to Kentucky to cause his elimination. He has very poor memory regarding this period of time and cannot separate fact from fantasy. He has extreme distrust of everyone and would not be able to effectively participate in or aid in his own defense.

8. Mr. Griffin would not have the ability to assist his attorney in listening to the evidence and making constructive suggestions to his attorney or supplying him with any factual information which would aid his attorney in his defense.

9. Mr. Griffin would have great problems in identifying any witnesses during 1973 which could aid in his defense and he could not recall facts or events during that period of time either in regard to the crime or in regard to any possible alibi.

10. Mr. Griffin would not be able to collaborate and to assist his attorney in finding witnesses or in aiding in his defense at the trial.

11. Mr. Griffin is a very bright person and would understand the trial process and the trial setting and would realize the nature of the proceedings and the consequences thereof. Mr. Griffin would not be able to listen to evidence at trial and relate to his attorney any inconsistencies or make any constructive comments concerning the case against him.

12. Mr. Griffin could handle the stress situation involved in a trial.

II. CONCLUSIONS OF LAW

1. The defendant, Mr. Edward Griffin has the substantial capacity to comprehend the nature and consequences of the proceedings pending against him.

2. The defendant, Mr. Edward Griffin, does not have the substantial capacity to participate rationally in his own defense.

The trial court then dismissed the indictment against Griffin.

Thus the question on this appeal is whether the finding of fact by the trial court that Griffin did not have the substantial capacity to participate rationally in his own defense was clearly erroneous.

The question of amnesia due to mental disease as a controlling factor in competency to stand trial is a matter of first impression in this jurisdiction, and the cases from other jurisdictions pertain primarily to amnesia induced by trauma.

The psychiatrist, who treated Griffin after his return to Kentucky and until the competency hearing, had reported to the court that "His illness remains in fairly good remission as far as the present is concerned * * *." This doctor was the only witness at the competency hearing. During the course of his testimony, he read from the conclusions and recommendations of the director of Forensic Psychiatry at the Massachusetts facility. This evaluation was conducted on the day Griffin was extradited to Kentucky:

> Mr. Edward Griffin suffers from a major mental illness. He is mentally ill with the diagnosis of schizophrenia. Although Mr. Griffin understands certain aspects of the trial process, he has a fixed delusional belief that his hearing scheduled for October 5, 1978 has been brought about by a conspiracy between Governor DuCockas and John Y. Brown, Jr., owner of the Boston Celtics. *It is recommended that the court find Mr. Griffin incompetent to stand trial, incompetent to waive extradition, and incompetent to engage in any other legal proceeding at this time.* (Emphasis added.)

It is apparent that the Massachusetts psychiatrist was of the opinion at that time that Griffin could not comprehend the nature of the proceeding against him, this all before the remission contained in the report. So any reliance on this opinion is irrelevant to the present proceeding. The testimony by the treating psychiatrist and his conclusion that Griffin was not competent to stand trial appears to us to be based primarily on Griffin's fragmented memory of the time surrounding the crimes for which he was indicted, for example:

> His memory of the times that are involved with the crimes for which he is charged seem to me to be very confused. A lot of his thinking about that was based again on his delusions. His understanding of himself was quite distorted * * *. It is my opinion that it is impossible to sort out his statements and understandings of the time of these alleged crimes in that part would be based on reality and part would be based on delusions and fantasy thinking.

> \* \* \* \* \* \*

> I feel that his ability to relate to his attorney particularly is compromised because of the distorted thinking. I think that it would be awfully hard to tell what was fact and what was the product of delusional thinking * * *. It is primarily in that area of relating to his attorney and preparing his defense that he would have the difficulty from a psychiatric standpoint which would compromise his ability.

In answer to a hypothetical question that contained total amnesia of the time of the event for which a defendant was charged, the doctor expressed the opinion this would in his opinion render the defendant incompetent to stand trial.

It is apparent from a review of the testimony and from the "Findings of Fact," the finding and conclusion that Griffin did not have the substantial capacity to participate rationally in his own defense is based upon Griffin's poor memory surrounding the time the offenses were committed. We are of the opinion that this finding of fact by the trial court is clearly erroneous, is not supported by substantial evidence, and is tantamount to a holding that amnesia or poor recall of events surrounding the commission of crime would render a defendant incompetent to stand trial. We have never adopted this criterion in this jurisdiction and are unwilling to do so now.

The test for a defendant's competency to stand trial as set out in *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960), and by this court in *Common-*

*wealth v. Strickland*, Ky., 375 S.W.2d 701 (1964), is whether he has substantial capacity to comprehend the nature and consequences of the proceeding pending against him and to participate rationally in his defense.

 We do not find by inference or otherwise that these authorities in any respect base the holding on a defendant's memory of the events at the time of the commission of a crime. Even though lack of memory may be a disadvantage to Griffin, the Commonwealth here has offered to open its files to assist him in preparing his defense. Amnesia does not preclude a defendant from receiving a fair trial. Memory is, after all, only one source of ascertaining the facts surrounding the event for which a crime is charged. If the amnesia is medically confirmed, the trial court can make a determination based on the situation in each case whether "fair trial" commands that the prosecution should open its files to the defendant. Loss of memory due to self-induced intoxication would not warrant an order opening prosecution files to the defendant.

We reject amnesia by virtue of mental disease or otherwise as a basis for declaring an accused incompetent to stand trial. This holding includes partial loss of memory or distorted memory of events at the time of commission of a crime.

Whether Griffin is still in remission at the time of a trial date can be determined at that time.

The opinion of the Court of Appeals and the judgment of the trial court are reversed with directions that the indictment be reinstated.

All concur.