STATE of Iowa, Appellee,

v.

Jerry Lee EMERSON, Appellant.

No. 84–1427.

Supreme Court of Iowa.

Oct. 16, 1985.

Ann Fitzgibbons of Scalise, Scism, Sandre & Uhl, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Marcia Mason and James Kivi, Asst. Attys. Gen., and John Hines, Co. Atty., for appellee.

Considered by HARRIS, P.J., and McCORMICK, LARSON, CARTER, and WOLLE, JJ.

HARRIS, Justice.

The defendant raises four assignments of error in this appeal from his conviction of first-degree murder and subsequent life sentence. We find no merit in any of them and affirm the trial court.

Defendant himself was the first to alert the Jones County sheriff's office that something was amiss at his farm. Alan Willman, a deputy sheriff, answered his telephone call. Defendant immediately said to Willman:

> Butch (Willman's nickname), there's been an accident out here—come out right away. It's an emergency.

Willman then asked defendant whether he needed an ambulance. Defendant replied, "Don't believe I will." Willman then asked defendant where he was. Defendant replied, "The farm." Willman left his office and went to defendant's farm.

Willman knocked on the back door of the farm house but no one answered. He then went to the front door and knocked but again no one answered. He then returned to the back door, went into the kitchen and living room area, and looked in the bed-

room on the first floor. Because he did not see anyone in the house, he went back outside to look around. He checked the garage, a storage area, and the ditch in the road but did not see anything. Willman then went back inside into the house. He went down the steps into the cellar where he noticed defendant on his back with a severe head wound. He also saw a body next to defendant.

The body was that of defendant's wife, Linda Emerson. She had been fatally stabbed and had also suffered rope and wire burns to her neck. According to the physician who performed the autopsy she was first strangled and rendered unconscious. She was then stabbed. Substances on her hands indicated she had been in close contact with a fired weapon. Defendant had sustained severe gunshot wounds to his head and stab wounds to his wrists and abdomen.

Willman radioed for a doctor and ambulance and then took three photographs of the scene. A special agent for the Iowa division of criminal investigation arrived shortly. He entered the house and then left with Willman to obtain a search warrant. A warrant was signed a few hours later the same afternoon. DCI technicians then returned to investigate further and to take more photographs.

Defendant was charged, tried, and convicted of first-degree murder. Iowa Code § 707.2(1) (1983). Other facts can be more appropriately related in connection with the specific assignments.

I. Defendant filed a pretrial motion to suppress, asserting evidence was obtained through an illegal search and seizure. He sought to exclude photographs taken at the scene, as well as autopsy photographs of the victim. The motion was denied and the evidence was received at trial. This ruling is challenged under defendant's first assignment of error. We can disregard our reservations about whether error was preserved at trial on some of the challenged evidence because we think all of it was properly received.

The general principles are undisputed. Warrantless searches and seizures are unreasonable unless they fall within one of the carefully drawn exceptions to the warrant requirement. *State v. Roth*, 305 N.W.2d 501, 504 (Iowa), *cert. denied*, 454 U.S. 870, 102 S.Ct. 338, 70 L.Ed.2d 174 (1981). These exceptions include consent to a search, a search incident to an arrest, probable cause coupled with exigent circumstances, or plain view. *State v. Lamp*, 322 N.W.2d 48, 53 (Iowa 1982).

Defendant's challenge proceeds from his belief that the officer's entry could be justified only on the basis of exigent circumstances. Defendant points to the six criteria which are used to test a claim of exigent circumstances: (1) a grave offense is involved; (2) the suspect is reasonably believed to be armed; (3) there is probable cause to believe the suspect committed the crime; (4) there is a strong reason to believe he is on the premises; (5) there is a strong likelihood of escape if not apprehended; and (6) the entry, though not consented to, is peaceable. These guidelines were first set forth in *Dorman v. United States*, 435 F.2d 385, 392–93 (D.C. Cir.1970) and adopted by us in *State v. Johnson*, 232 N.W.2d 477, 480 (Iowa 1975).

Defendant argues that, under the six factors, exigent circumstances did not justify the warrantless search and seizure. The State supports the trial court ruling by contending for a broader right to make a warrantless entry in "emergency situations" in which the six factors might not exist.

The State is on firm ground in contending for an officer's right to make a warrantless entry in emergency situations without satisfying the six factors. This is because the work of a peace officer is not confined to apprehending criminals. Officers are also called upon to protect people and to rescue those in distress. In clear recognition of this function, the United States Supreme Court has stated:

We do not question the right of the police to respond to emergency situations. Numerous state and federal cases have

recognized that the fourth amendment does not bar police officers from making warrantless entries and searches when they reasonably believe a person within is in need of immediate aid. Similarly, when police come upon the scene of a homicide they may make a prompt warrantless search of the area to see if there are victims or if a killer is still on the premises.

*Mincey v. Arizona,* 437 U.S. 385, 392, 98 S.Ct. 2408, 2414, 57 L.Ed.2d 290, 300 (1978). Our cases recognize the same principle by stating that exigent circumstances include emergency situations where officers or other persons may be subject to violence or injury. *State v. Hardin,* 359 N.W.2d 185, 188 (Iowa 1984) and *State v. Luloff,* 325 N.W.2d 103, 105 (Iowa 1982).

The rule providing for warrantless entries in emergency situations does not, as defendant fears, provide an excuse for wholesale violation of fourth amendment rights. The Wisconsin supreme court has articulated a workable method to test the reasonableness of such entries:

> [T]he test for a valid warrantless search under the emergency doctrine requires a two-step analysis. First, the search is invalid unless the searching officer is actually motivated by a perceived need to render aid or assistance. Second, even though the requisite motivation is found to exist, until it can be found that a reasonable person under the circumstances would have thought an emergency had existed, the search is invalid. Both the subjective and objective tests must be met.

*State v. Prober,* 98 Wis.2d 345, 365, 297 N.W.2d 1, 12 (1980). *See also State v. Boggess,* 115 Wis.2d 443, 450, 340 N.W.2d 516, 521 (1983).

■ Under this two-step analysis Deputy Sheriff Willman was easily justified in his entry. Indeed, in view of defendant's own request and his condition at the time, the officer might well have been criticized for doing less.

■ Furthermore, the "plain view" exception justifies the seizure of the evidence following the warrantless entry. The plain view doctrine allows evidence to be seized if the intrusion into an otherwise protected area is justified, the discovery of the object is inadvertent, and the object's incriminating nature is immediately apparent. *Coolidge v. New Hampshire,* 403 U.S. 443, 468–71, 91 S.Ct. 2022, 2039–41, 29 L.Ed.2d 564, 584–86 (1971). We have applied the plain view doctrine in a number of cases. *See, e.g., State v. Oliver,* 341 N.W.2d 744, 746 (Iowa 1983); *State v. Kelly,* 284 N.W.2d 236, 238–39 (Iowa 1979).

Defendant's first assignment is without merit.

II. Prior to trial defendant also unsuccessfully moved to exclude evidence concerning his actions at a party more than six weeks before the murder of his wife. The evidence showed defendant and the victim had an altercation at the party. As part of the same motion defendant sought to exclude statements made by the victim to others in which she indicated she was beaten by defendant.

Defendant preserved the point by objecting to the evidence when offered at trial. A physician testified he saw the victim in a hospital emergency room on August 7, 1983 (the murder occurred September 22, 1983). Over objection, the doctor described the victim's various bruises and abrasions and quoted the victim as saying she received them as a result of a beating by defendant.

Michael Orr, a friend of defendant and the victim, also testified over defendant's objection about an incident at the same party. On that occasion he saw defendant grab the victim by the shoulders and saw the victim on the ground.

Under Iowa rule of evidence 404(b) evidence of prior acts is admissible only (1) if such evidence is relevant, (2) there is clear proof defendant committed the prior acts, and (3) if the present offense is reasonably similar to the prior act. Defendant contends the incidents described in the challenged evidence do not qualify under the rule 404(b) exception. He argues the earli-

er incidents were not reasonably similar, were too remote in time, and that the prejudice of the testimony "outweighs any probative value it could have."

■ Rule 404(b) is largely a codification of prior law. It reflects the view that evidence of other crimes will be excluded unless it falls within one of the recognized exceptions. Evidence of similar crimes can be admitted to prove: (1) motive, (2) intent, (3) absence of mistake or accident, (4) a common scheme or system of criminal activity embracing the commission of two or more crimes so related that proof of one tends to prove the other, or (5) identity of the person charged with the crime. *State v. Wright*, 191 N.W.2d 638, 640 (Iowa 1974).

■ Before such evidence will be admitted "[t]he state must present clear proof that the defendant was culpable in the other acts in question." *State v. Johnson*, 224 N.W.2d 617, 620 (Iowa 1974). The prior offense "must be reasonably similar to the crime charged only when similarity is essential to establish the relevancy of the evidence under the exception relied on." *State v. Cuevas*, 282 N.W.2d 74, 80 (Iowa 1979). Third, "[t]he basic standard by which other crimes evidence is tested is relevancy." *State v. McDaniel*, 265 N.W.2d 917, 921 (Iowa 1978). Whether such evidence is admissible is within the sound discretion of the trial court. *State v. Conner*, 314 N.W.2d 427, 429 (Iowa 1982).

Evidence of similar crimes has frequently been received under one or another of the foregoing exceptions in murder cases. *See State v. Johnson*, 318 N.W.2d 417, 438 (Iowa 1982), *cert. denied*, 459 U.S. 848, 103 S.Ct. 106, 74 L.Ed.2d 95 (1983) (in prosecution for murder of defendant's son, evidence of defendant's abuse of victim admissible to show "defendant's prior relationship" with victim); *State v. Hilleshiem*, 305 N.W.2d 710, 714 (Iowa 1981) (evidence of victim's prior injuries admissible as "circumstantial evidence bearing on defendant's relationship" with victim); *State v. O'Connell*, 275 N.W.2d 197, 202 (Iowa 1979) (evidence of defendant's prior assaults on victim as well as their quarrels admissible to show identity and intent); *State v. Kellogg*, 263 N.W.2d 539, 542 (Iowa 1978) (quarrel between defendant and victim wife admitted "as bearing on defendant's *quo animo*").

■ The evidence of the quarrels here falls under the exception. Contrary to defendant's assertion, they were not too remote in point of time. In *Kellogg* we held evidence of an argument between defendant and the victim which occurred six weeks before the murder was admissible. *Id.* at 542. In *State v. Peterson*, we upheld the admission of letters written a year before the victim's death to show the relationship between the victim and defendant. 219 N.W.2d 665, 672 (Iowa 1974). In the present case the six-week lapse between the similar acts and the murder was not so remote as to bar admissibility. Finally, we reject defendant's contention that he was not shown culpable in the prior acts. We find no abuse of discretion in admitting the evidence.

III. Prior to trial defendant maintained he suffered from amnesia and was unable to recall what happened on the day in question. He asserted he was thus unable to stand trial and sought a competency hearing under Iowa Code section 812.3. At the hearing defense expert Thomas Sannito, a Dubuque psychologist, testified the defendant suffered from permanent amnesia and would therefore not be able to effectively assist in his defense. Dr. Romulo Lara, a penal psychiatrist for the State, would not give an opinion on whether defendant had amnesia, emphasizing the subjectivity of the symptoms. He nevertheless believed defendant would be able to cooperate with counsel in preparing his case.

The trial court concluded the defendant suffered from amnesia but found him competent to stand trial. The court noted that defendant stipulated he understood the charges against him. The trial judge also found the

amnesiac event covers a period of time from shortly before the incident giving

rise to the charge occurred, i.e., earlier the same date, to a few days subsequent to the victim's death; therefore, the defendant is in a position to converse at length with counsel concerning all other facts and circumstances ....

In his third assignment defendant challenges the competency ruling, contending that because of his amnesia his counsel was "deprived of information revealing potential and varied items of possible defense, justification, accidents, third-party involvement, mental stress, self-defense, etc."

In *State v. Lyon* we pointed out that an accused "may not be tried or convicted while he is incompetent to stand trial or assist in his own defense. To deprive him of this right is to deprive him of due process and a fair trial." 293 N.W.2d 8, 12 (Iowa 1980). The issue of competency must be established at a hearing pursuant to section 812.3, at which it must be shown that the "defendant appreciates the charge, understands the proceedings, and can assist effectively in the defense." *Lyon*, 293 N.W.2d at 9.

When an accused's competency is challenged on appeal, we

[e]xamine the information before the trial court to determine if at the relevant time an unresolved question of the defendant's competency reasonably appeared. Because constitutional safeguards are implicated, we make our own evaluation of the totality of the circumstances. [Citation] This means we review the record de novo. [Citation]

*State v. Kempf*, 282 N.W.2d 704, 707 (Iowa 1979). Although we have recognized amnesia as a possible defense to a specific intent crime, *State v. Barney*, 244 N.W.2d 316, 318 (Iowa 1976), we have not dealt with the question of whether later amnesia prevents an accused from standing trial. In light of *Kempf*, however, we must undertake a de novo review to determine whether the trial court erred in its competency determination. *State v. Pedersen*, 309 N.W.2d 490, 501 (Iowa 1981) (upon de novo review of entire record, the court found defendant

unable to assist effectively in defense due to mental illness); *see also Lyon*, 293 N.W.2d at 9.

It seems to be a nearly unanimous view among the jurisdictions which have considered the question that amnesia alone will not render an accused incompetent to stand trial. *See, e.g., United States v. Swanson*, 572 F.2d 523, 526, (5th Cir.), *cert. denied*, 439 U.S. 849, 99 S.Ct. 152, 58 L.Ed.2d 152 (1978); *see also* Annot., 46 A.L.R.3d 544 (1972). The other courts have found that amnesia does not necessarily hinder preparation of a defense where most of the state's evidence is, as it is here, physical in nature. *State v. Austad*, 197 Mont. 70, 78–82, 641 P.2d 1373, 1378–79 (1982); *see also State v. McClendon*, 103 Ariz. 105, 108–09, 437 P.2d 421, 424–25 (1968) (accused suffering from amnesia not incompetent to stand trial even though accused was only witness to alleged murder and evidence was largely circumstantial); *People v. Soto*, 68 Misc.2d 629, 633, 327 N.Y.S.2d 669, 673 (1972) (defendant's amnesia did not have adverse effect on examination and cross-examination of witnesses who testified regarding physical evidence). Whether defendant has access to the prosecutor's files has also been considered a significant factor in determining the question of incompetency as a result of amnesia. *Commonwealth v. Griffin*, 622 S.W.2d 214, 217 (Ky.1981); *Austad*, 197 Mont. at 81, 641 P.2d at 1379.

Under these authorities we hold that defendant's amnesia did not render him incompetent to stand trial. There was a great deal of physical evidence in this case. Moreover defendant had full access to the state's files pursuant to court order. The defendant stipulated he understood the charges and consequences involved. The symptoms of amnesia are wholly subjective so it is difficult, if not impossible, for a court to determine when the accused might remember enough to make another trial possible. Defendant's own witness testified the amnesia could well be permanent. To allow defendant to avoid conviction under these circumstances is contrary to both

public policy and common sense. *See State v. Pugh,* 117 N.J.Super. 26, 35, 283 A.2d 537, 542 (1971).

We agree with the trial court in finding defendant competent to stand trial.

IV. Contrary to defendant's contention in his final assignment, there was abundant evidence to support his conviction. *See City of Des Moines v. Huff,* 232 N.W.2d 574, 576 (Iowa 1975).

AFFIRMED.