Alane LEYDENS, Appellant,

v.

The CITY OF DES MOINES, Drew Burham, and Julianne Lisa Dowie, Appellees.

No. 91–117.

Supreme Court of Iowa.

May 13, 1992.

---

Jerrold Wanek and David A. Morse of Garten & Wanek, Des Moines, for appellant.

Bruce E. Bergman, Des Moines, for appellees.

Considered by HARRIS, P.J., and LARSON, LAVORATO, NEUMAN, and SNELL, JJ.

LARSON, Justice.

During the execution of a search warrant at LaRucci's, a Des Moines restaurant and lounge, officers of the Des Moines Police Department conducted a warrantless strip search of Alane Leydens, a patron. Leydens sued the City of Des Moines and the officers under 42 U.S.C. § 1983 and under common-law theories of negligence, assault and battery, and false imprisonment.

Defendants were granted summary judgment on Leydens' claims of negligence and § 1983 liability. The case went to the jury on the remaining common-law counts, and the jury returned a verdict of $5000. Leydens appealed the court's earlier summary judgment for the defendants and the court's denial of Leydens' own summary judgment motion and application for adjudication of law points. We reverse and remand.

Leydens raises three issues on appeal: (1) the legality of the search of her person, (2) the court's application of qualified immunity under § 1983, and (3) the court's denial of Leydens' motion for summary judgment and application for adjudication of law points.

The facts are not disputed. On November 1 and 2, 1988, undercover narcotics officers visited LaRucci's Restaurant and observed what they believed to be drug transactions. Officer Scott Anderson applied for a search warrant, submitting a sworn statement containing the following language:

Mr. Cauterucci [owner of LaRucci's] was observed on four separate occasions escorting a customer into the kitchen area for a brief period then exiting. Twice with a white female about forty yr. blonde hair, and a long black leather coat.

The search warrant was issued authorizing the police to search the premises of LaRucci's and three individuals—Cauterucci, Daniel Vayzant, and a bartender. Alane Leydens was not named or described in the warrant, and it is undisputed that the warrant did not authorize a search of Leydens or any other woman.

On November 3, the Des Moines Police Department Narcotics Squad entered La-Rucci's and executed the search warrant. Leydens was detained and ultimately strip searched by a female officer. The search revealed no contraband, or weapons, and Leydens was allowed to leave. This suit followed.

■ Under Iowa Rule of Civil Procedure 237, a summary judgment shall be rendered on motion if the record shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The principal issue on this appeal is whether the district court properly entered summary judgment on behalf of the defendants.

Section 1983 of 42 U.S.C. provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities, secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

■ A plaintiff in a § 1983 case must establish (1) that the defendant deprived the plaintiff of a right secured by the constitution and laws of the United States, (2) that the defendant acted under color of state law, (3) that the conduct was a proximate cause of the plaintiff's damage, and (4) the amount of damages. *Christenson v. Ramaeker*, 366 N.W.2d 905, 907 (Iowa 1985).

### I. *Legality of the Search.*

■ The gist of Leydens' § 1983 case is that she was deprived of her rights under the fourth amendment to the United States Constitution, which provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but on probable cause, supported by oath or affirmation and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

Leydens correctly argues that, because the police did not have a warrant to search her, the search was valid only if it fell within one of the constitutionally recognized exceptions: consent, search incident to an arrest, probable cause and exigent circumstances, or "plain view." *See State v. Emerson*, 375 N.W.2d 256, 258 (Iowa 1985); *State v. Eubanks*, 355 N.W.2d 57, 58 (Iowa 1984).

The defendants' answer raised the issue of consent, but they do not pursue this on appeal. Neither the search incident to an arrest nor the "plain view" exception is asserted by the defendants; the validity of the search thus turns on the probable cause-exigent circumstances exception. More specifically, the case turns on whether an officer could reasonably have believed he had grounds for a warrantless search because this is the gist of the defendants' "qualified immunity" defense to Leydens' § 1983 claim.

### II. *The Qualified Immunity Issue.*

The Supreme Court has explained the rationale of qualified immunity:

When government officials abuse their offices, "action[s] for damages may offer the only realistic avenue for vindication of constitutional guarantees." *Harlow v. Fitzgerald*, 457 U.S. [800], at 814, 73 L.Ed.2d 396, 102 S.Ct. 2727 [at 2736]. On the other hand, permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties. *Ibid.* Our cases have accommodated these conflicting concerns by generally providing governmental officials performing discretionary functions with a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have

been thought consistent with the rights they are alleged to have violated.

*Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523, 529–30 (1987).

In such case,

> [t]he relevant question ... is the objective (albeit fact-specific) question whether a reasonable officer could have believed [this officer's] warrantless search to be lawful, in light of clearly established law and the information the searching officers possessed. [The officer's] subjective beliefs about the search are irrelevant.

*Id.* at 641, 107 S.Ct. at 3040, 97 L.Ed.2d at 532.

Prior to *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the test for qualified immunity included a subjective, as well as objective, test. Under the rule predating *Harlow,* immunity would not apply if (1) the officer knew or reasonably should have known his action would violate the plaintiff's constitutional rights, or (2) he took the action with the malicious intent to cause a deprivation of a constitutional right. *See Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214, 225 (1975).

*Harlow* changed this rule because of the problems inherent in a subjective inquiry. *Id.* at 816–17, 102 S.Ct. at 2737–38, 73 L.Ed.2d at 409–10. The Court in *Harlow* adopted a purely objective test under which "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738, 73 L.Ed.2d at 410.

Under this objective test, the Court speculated, the need for full trials on qualified immunity issues would be reduced, and many insubstantial claims could be resolved by summary judgment. *Id.*

A summary judgment motion, as in this case, is therefore a viable means of evaluating a claim of qualified immunity under the objective test adopted in *Harlow.* The

problem in the present case is that the court failed to require a showing that an officer could reasonably conclude he had both probable cause and exigent circumstances so as to excuse the lack of a warrant. The Court ruled that the defendants were entitled to qualified immunity as a matter of law because they could reasonably have believed they had probable cause for the search based on the similarity of Leydens to the woman described in the warrant application and on Leydens' proximity to the kitchen, where the drugs were apparently kept. The plaintiff argues that this did not constitute probable cause, but even if it did, the defendants are not entitled to the qualified immunity defense because they do not even claim that they could reasonably believe there were exigent circumstances.

■ The general rule is, of course, that the probable cause exception requires exigent circumstances as well. *Emerson,* 375 N.W.2d at 258; *Eubanks,* 355 N.W.2d at 58. Exigent circumstances include danger to the officers or others, the risk of escape, or the likelihood that evidence will be concealed or destroyed. *State v. Holtz,* 300 N.W.2d 888, 893 (Iowa 1981).

The defendants argue that under a qualified immunity claim only an "arguable" case of probable cause need be established. In other words, even if probable cause did not actually exist, if an officer could reasonably believe it did, this is sufficient to immunize the officer from liability. Under this theory, defendants argue, it is not incumbent upon them to establish that they reasonably believed there were exigent circumstances as well. The district court agreed, relying on *Ybarra v. Illinois,* 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). The district court stated, referring to *Ybarra,* that

> the case says nothing about requiring exigent circumstances, and presumably, exigency is not required due to the circumstances surrounding the police's presence in the place. Therefore, even if the plaintiff is correct, such a policy would be legal in this situation.

Our reading of *Ybarra* suggests that it did not hold that probable cause was the only requirement for a warrantless search under these circumstances. In *Ybarra,* the question was whether the Court should extend the "reasonable belief or suspicion" standard for evidence gathering under the holding of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), to a general search of patrons on the premises.

The Court in *Ybarra* declined to extend the *Terry* rule, noting that this exception is narrow in scope and does not permit "a frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked, even though that person happens to be on premises where an authorized narcotics search is taking place." *Ybarra,* 444 U.S. at 94, 100 S.Ct. at 343, 62 L.Ed.2d at 247.

The Court refused

to permit evidence searches of persons who, at the commencement of the search, are on "compact" premises subject to a search warrant, at least where the police have a "reasonable belief" that such persons "are connected with" drug trafficking and "may be concealing or carrying away the contraband."

*Id.*

While, as the defendants point out, *Ybarra* did not mention the need for establishing exigent circumstances as the second element of a probable cause exception, we do not believe that *Ybarra* stands for the proposition that exigent circumstances are not required. It is, we believe, simply a matter that the Court found that no probable cause was established, making it unnecessary to consider exigent circumstances.

That both a reasonable belief of probable cause and exigent circumstances are required is made clear in *Anderson,* which postdated *Ybarra.* The Court in *Anderson* said:

We have recognized that it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be

lawful—should not be held personally liable. *The same is true of their conclusions regarding exigent circumstances.* 483 U.S. at 641, 107 S.Ct. at 3039–40, 97 L.Ed.2d at 531 (emphasis added) (citation omitted).

■ The district court applied an erroneous rule of law in granting summary judgment on the qualified immunity theory. The test is whether the officer's "actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Id.* at 638, 107 S.Ct. at 3038, 97 L.Ed.2d at 530. An officer's actions could not reasonably have been thought to be consistent with the subjects' fourth amendment rights if no consideration was given to the exigent-circumstance requirement. The summary judgment record in the present case is silent on that matter. We therefore reverse and remand for further proceedings consistent with this opinion.

Summary judgment was also entered for the defendant City of Des Moines whose written policies, it is argued, authorize searches on probable cause alone. Under the reasoning of the district court, this was sufficient. For the reasons already discussed, probable cause alone is not sufficient. We therefore believe the court applied an erroneous principle of law in dismissing the case against the City, and we reverse and remand for further proceedings as to the City as well.

### III. *The Ruling on the Plaintiff's Summary Judgment and Rule 105 Motions.*

■ Leydens' application for adjudication of law points and her motion for summary judgment were denied by the court. Under rule 105, the adjudication of law points may be based only on the uncontroverted facts in the record or pleadings. We agree with the district court that any uncontroverted facts in the summary judgment record were insufficient to grant a judgment for the plaintiff as a matter of law. Accordingly, we believe the court properly resolved these issues.

We reverse and remand for further proceedings.

REVERSED AND REMANDED.