# IN THE COURT OF APPEALS OF IOWA

No. 15-0708
Filed December 21, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**CHRISTOPHER RYAN ALLEN,**
        Defendant-Appellant.

_____

        Appeal from the Iowa District Court for Black Hawk County, Joel A. Dalrymple, Judge.

        Christopher Allen appeals his convictions for two counts of possession of a controlled substance with intent to deliver, ongoing criminal conduct, and a drug tax stamp violation.  **AFFIRMED.**

        Christopher A. Clausen of Clausen Law Office, Ames, for appellant.

        Thomas J. Miller, Attorney General, and Kevin R. Cmelik and Thomas E. Bakke, Assistant Attorneys General, for appellee.

        Heard by Vogel, P.J., and Tabor and Mullins, JJ.

**MULLINS, Judge.**

Christopher Allen appeals his convictions in two cases, FECR192889 and FECR196716, following a trial on the minutes of testimony for two counts of possession of a controlled substance with intent to deliver, ongoing criminal conduct, and a drug tax stamp violation, in violation of Iowa Code sections 124.401(1)(a), 124.401(1)(c), 706A.5, 706A.2, and 453B.12 (2013). Allen claims the district court erred in denying his motions to suppress and his trial counsel provided ineffective assistance of counsel. We affirm.

## I.     Background Facts and Proceedings

In August 2013, police executed a search warrant at Allen's home in Waterloo, Iowa. During the search, officers found several rocks of crack cocaine, cash, a digital scale, and plastic sandwich bags with the corners removed. Officers then obtained a search warrant to search the apartment of a woman identified as Allen's girlfriend. In the apartment they found receipts and tickets documenting trips between the Waterloo area and Chicago, Illinois and a large amount of cash. In an interview with police officers, Allen said he received the cash from a settlement; he also admitted to selling crack cocaine in Chicago but denied selling it in Iowa. Based on these and other facts, the State charged Allen on August 15, 2013, with possession of a controlled substance with intent to distribute and/or conspiracy to possess a controlled substance with intent to distribute, in violation of section 124.401(1)(c), and a drug tax stamp violation, pursuant to section 453B.12.

In early February 2014, a confidential informant told police Allen was transporting crack cocaine from Chicago to Waterloo by bus while concealing the

crack cocaine in his pants. Because Allen owed the confidential informant money for drugs, the police arranged a controlled transaction between the confidential informant and Allen, during which Allen paid fifty dollars to the confidential informant, although no narcotics were exchanged. The confidential informant also told the officers Allen was going to Chicago to acquire additional narcotics. As a result of this information, the officers obtained a warrant to track the location of Allen's cell phone, which notified the officers when Allen travelled back from Chicago to Waterloo by bus on February 21, 2014. Officers observed Allen disembark the bus without luggage and enter a vehicle as a passenger.

Another officer, who had a certified narcotics detection police dog, was called to conduct a stop of the vehicle. The officer had been informed of and observed what he believed to be a burned out taillight on the rear of the vehicle. The officer had also been informed there was an issue with probable controlled substances.

After initiating the stop, the officer made contact with the vehicle's occupants. Allen, a passenger in the vehicle, appeared nervous and inquired whether he was in trouble. The officer obtained the vehicle's occupants' identifying information, returned to his vehicle, ran their information through his computer, and discovered the driver was the registered owner of the vehicle and Allen had previous narcotics charges.

The officer asked the owner of the vehicle to exit it. The officer and the vehicle owner looked at the taillight, and the vehicle owner explained the lamp was painted over in red, not burned out. The officer discussed with the vehicle owner how this made the light virtually impossible to see during the day.

The officer asked the vehicle owner if he could search both the car and the individual's person. The owner agreed. Nothing was found on the individual's person. The officer asked Allen to exit the vehicle and asked for consent to search his person, which Allen gave, although he refused to spread his legs for the pat down; based on this refusal and Allen's size, the officer was unable to search Allen's upper-thigh area. Nothing was found on Allen's person during the search.

The officer then conducted a search of the vehicle and, discovering nothing, retrieved the police dog to complete the search. The police dog immediately went to the front passenger seat where Allen had been sitting, began sniffing heavily on the seat cushion, and laid down, which the officer testified was the dog indicating he had come to the source of the narcotic odor. The officer then attempted to further search Allen, which "was no better than the first one." The officer contacted the investigators, who requested the vehicle's occupants be transported to the police department as they believed Allen had narcotics in his pants. After Allen was brought to the police station, he was read his *Miranda* warnings and then strip searched. Crack cocaine was found sewn into Allen's underwear. Allen was charged with possession of a controlled substance with intent to deliver, in violation of section 124.401(1)(a), ongoing criminal conduct, in violation of sections 706A.5 and 706A.2, and a drug tax stamp violation, pursuant to section 453B.12.

Allen filed a pro se motion to suppress, alleging that, after the initial car search and search of his person, he was detained against his will and transported to the Waterloo police station. Counsel for Allen then filed a motion

to suppress, challenging the existence of probable cause for the traffic stop, detention, and subsequent strip search. The court denied Allen's motions by order dated November 18, 2014. Allen waived his right to trial by jury and proceeded to trial on the minutes of testimony, following which Allen was found guilty of two counts of possession of a controlled substance with intent to deliver, ongoing criminal conduct, and a drug tax stamp violation. Allen appeals.

## II. Standards and Scope of Review

Because Allen asserts the district court violated his constitutional rights in denying his motions to suppress, we review his claim de novo. *See State v. Tyler*, 830 N.W.2d 288, 291 (Iowa 2013). "A de novo review constitutes 'an independent evaluation of the totality of the circumstances as shown by the entire record.'" *Id.* (quoting *State v. Pals*, 805 N.W.2d 767, 771 (Iowa 2011)). We are not bound by the district court's credibility determinations, but we can give them deference. *See State v. Naujoks*, 637 N.W.2d 101, 106 (Iowa 2001).

We may consider an ineffective-assistance-of-counsel claim for the first time on appeal, and our review is de novo. *See State v. Philo*, 697 N.W.2d 481, 485 (Iowa 2005). In order to prove an ineffective-assistance-of-counsel claim, an appellant must show by a preponderance of the evidence counsel (1) failed to perform an essential duty and (2) prejudice resulted. *See State v. Tompkins*, 859 N.W.2d 631, 637 (Iowa 2015). We can resolve ineffective-assistance-of-counsel claims under either prong. *State v. Ambrose*, 861 N.W.2d 550, 556 (Iowa 2015).

### III. Analysis

### A. Motions to Suppress[1]

Allen does not argue the officer did not have probable cause to stop the vehicle or a reasonable and articulable suspicion of criminal activity to justify a traffic stop. Subject to certain exceptions, "a search or seizure must be conducted pursuant to a warrant to be reasonable." *State v. Vance*, 790 N.W.2d 775, 780 (Iowa 2010). One such exception "allows an officer to briefly stop an individual or vehicle for investigatory purposes when the officer has a reasonable, articulable suspicion that a criminal act has occurred, is occurring, or is about to occur." *Id.*; *see also State v. Kooima*, 833 N.W.2d 202, 206 (Iowa 2013) ("A police officer can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot."). A stop is also proper where the officer has probable cause that criminal activity has occurred. *See Tyler*, 830 N.W.2d at 292. "[W]hen a peace officer observes a violation of our traffic laws, however minor, the officer has probable cause to stop a motorist." *Id.* at 293 (citation omitted).

The investigating officer observed a taillight on the vehicle that he believed to be not functional. When he stopped the vehicle, he learned the taillight had been painted over in red making it "basically impossible to see during the day." While the officer may have been mistaken as to the reason why the light was not functioning, *see id.* at 294 ("Our precedent is clear that a mistake of fact may

---

[1] We have also considered the arguments included in the pro se briefs Allen filed in support of his contention that the motion to suppress should have been granted by the district court.

justify a traffic stop."), the view of the taillight was obstructed. We find the officer had probable cause to stop the vehicle. *See* Iowa Code §§ 321.387 (requiring vehicles to "be equipped with a lighted rear lamp or lamps, exhibiting a red light plainly visible from a distance of five hundred feet to the rear"), 321.404 (requiring vehicles to "be equipped with a signal lamp or signal device which . . . shall be plainly visible and understandable in normal sunlight"), 321.404A(1) (prohibiting a person from operating a motor vehicle on state highways when the vehicle "is equipped with a device that restricts the light output" of headlamps, rear lamps, or signal lamps).

On appeal, Allen contends in his pro se briefing that the traffic stop was pretextual.[2] However, this argument was not raised by Allen or his counsel in their motions to suppress nor was it considered by the district court in its ruling. Accordingly, it is not preserved for our review on appeal. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."). Regardless, "even if we were to find the stop was pretextual, there was still no [Fourth Amendment] violation because probable cause—not the motivation of the arresting officer—determines whether the stop is valid." *State v. Predka*, 555 N.W.2d 202, 206 (Iowa 1996); *see also State v. Harrison*, 846 N.W.2d 362, 266 (Iowa 2014) ("The motivation of the officer stopping the vehicle is not controlling in determining whether reasonable suspicion existed. The officer is therefore not bound by his real reasons for the

---

[2] We note Allen claims the "traffic stop, dog sniff, pat-down, and strip search were all pretextual" but fails to articulate how anything beyond the traffic stop for the taillight might be a pretext.

stop.'" (citation omitted)); *State v. Kubit*, 627 N.W.2d 914, 919 (Iowa 2001) ("[A]s long as a valid reason for the officers' presence exists, the officers' real motives are of no usefulness."), *overruled on other grounds by State v. Turner*, 630 N.W.2d 601, 606 n.2 (Iowa 2001).[3]

Allen challenges the lawfulness of the extension of the stop. Allen admits he consented to step out of the vehicle and consented to a frisk of his person but asserts his consent went no further. Allen relies upon *In re Pardee*, 872 N.W.2d 384 (Iowa 2015). In *Pardee*, the detained individual did not consent to the search. 872 N.W.2d at 388. Similarly, in *Rodriguez v. United States*, 135 S. Ct. 1609, 1613 (2015), upon which Allen relies, the individual refused consent to search the vehicle with a dog.[4] The record reflects, however, that the owner of the car in this case also consented to a search of the car. *See generally State v. Abrams*, No. 14-0260, 2015 WL 3884173, at *2 (Iowa Ct. App. June 24, 2015) ("[The defendant] was not the driver of the vehicle. He was not the owner of the

---

[3] Allen also makes a passing reference to the State's failure to submit a determination of reliability concerning the alleged information received from the informant, while citing a supreme court case for the general proposition that a "tipster" is different from a confidential informant. First, neither of the motions to suppress disputed the reliability of the confidential informant. Second, at least one officer testified the informant had given information to officers before and he had not known the information given to be false. Although, the officer also admitted he "had not known the informant for long," another agent had known the informant much longer, and he did not believe information from this informant had led to any other arrests or search warrants. Regardless, Allen makes this passing reference when arguing the stop was pretextual, a claim we have already determined was not preserved for our review. *See Soo Line R.R. Co. v. Iowa Dep't of Transp.*, 521 N.W.2d 685, 691 (Iowa 1994) (finding a "random mention of [an] issue, without elaboration or supportive authority, is insufficient to raise the issue for our consideration"). Allen also claims the police reports submitted by the State in their supplemental appendix are inadmissible hearsay. He appears to be objecting to the State's inclusion of the minutes of testimony, which referenced and incorporated the police reports. It is upon these minutes of testimony that Allen agreed to be tried. We find no merit to his claim.

[4] No allegations have been made that the consent given was coerced. *See Pals*, 805 N.W.2d at 777-84.

vehicle. The evidence shows he was merely a recent passenger. Because [the defendant] did not have a legitimate expectation of privacy in the vehicle, he cannot show his Fourth Amendment rights were violated by a search of the vehicle [consented to by the vehicle's owner]."). Accordingly, the officer's examination of the car and its occupants were within the express consent of the parties involved. *See State v. Bergmann*, 633 N.W.2d 328, 338 (holding "a warrantless search can be justified" where the officer received "consent to search").

However, at the time the officer requested permission to search the vehicle and the passenger, the reason for the stop—the obstructed view of the taillight—had been resolved. *See Rodriquez*, 135 S. Ct. at 1614 ("Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed."); *see also Pardee*, 872 N.W.2d at 392. We must look, therefore, at whether the officer had reasonable suspicion to detain Allen after the traffic stop ended. *See Rodriguez*, 135 S. Ct. at 1615 (noting an officer "may conduct certain unrelated checks during an otherwise lawful traffic stop" unless it is done "in a way that prolongs the stop," at which time the officer must have "the reasonable suspicion ordinarily demanded to justify detaining an individual"); *see also State v. Hanrahan*, No. 12-0012, 2013 WL 4009675, at *2 (Iowa Ct. App. Aug. 7, 2013).

The State argues reasonable suspicion existed because the officer had the following information related to the narcotics investigation: Allen had previous drug convictions and was being prosecuted at the time for the August 2013 incident; a confidential informant—whom the police had previously used—had

told police Allen was smuggling crack cocaine in his pants by bus from Chicago to Waterloo; the police had orchestrated a controlled buy where Allen paid the confidential informant for a past drug transaction; Allen did in fact travel from Chicago to Waterloo by bus and did not have any luggage; the police knew Chicago to be a primary source of cocaine for the Waterloo area, persons transporting drugs commonly use busses as transportation and travel without luggage, and persons transporting narcotics commonly conceal the drugs in their pants.[5] *See State v. Hoskins*, 711 N.W.2d 720, 727-28 (Iowa 2006) (finding the officer had probable cause to search the defendant's vehicle, exigent circumstances existed, and the "facts [we]re sufficient to establish a fair probability that illegal drugs would be found in [the defendant's] possession," where "a reliable informant with a favorable track record of providing information to the authorities provided [the officer] with the informant's firsthand observation of [the defendant] at the bar with drugs in his possession," the officer "corroborated the information provided by the informant when he sent officers to confirm" the location of the defendant's car, and the officer "was aware of [the defendant's] prior drug convictions").

"Reasonable suspicion is a less demanding standard than probable cause . . . ." *State v. Walshire*, 634 N.W.2d 625, 626 (Iowa 2001) (citation omitted). Here, the officer relied upon information received from a confidential informant. There was no history of the confidential informant providing false

---

[5] The State argues, and Allen does not contest, that the collective-knowledge doctrine applies, as the officers involved were in communication about all of these facts. *See State v. Satern*, 516 N.W.2d 839, 841 (Iowa 1994) ("The knowledge of one police officer, acting in concert with others, is presumed to be shared by all.").

information, and one officer testified he had no reason to question the informant's information or motive in providing the information. Further, the informant's information was partially verified—that Allen would arrive from Chicago by bus. *See id.* at 628 ("Because an informant is shown to be right about some things, he is probably also right about other facts that he has alleged, including the claim that the object of the tip is engaged in criminal activity." (citation omitted)). Moreover, this is not a circumstance where the officer relied solely upon the word of an anonymous tipster. *See id.* at 627 (citing *Florida v. J.L.*, 529 U.S. 266, 270-71 (2000), for the proposition "an anonymous call, absent other indicia of reliability, cannot provide reasonable suspicion"). This was an informant known to the police and believed to provide reliable information. Additionally, the officer was aware of Allen's criminal history, *see Pardee*, 872 N.W.2d at 395 (concluding "reasonable suspicion could potentially exist only if one weaves in the verbal answers given by [the detained individuals] regarding their travel plans and their respective criminal histories"), and was aware Allen had just arrived from Chicago (a known source of narcotics) by bus (a known means of transporting narcotics) without any luggage (a circumstance associated with the transportation of narcotics). We conclude the officer had independent reasonable suspicion to continue the detention of Allen to request permission to search Allen's person and the vehicle.

Allen also generally alleges that being taken to the police station was an unlawful extension of the traffic stop. The district court did not specifically rule on the issue of Allen's transportation. *See Meier*, 641 N.W.2d at 537. However, the purpose of the transportation was to conduct a strip search of Allen. Allen also

generally alleges this search violated his rights. The State argues the transportation and search were supported by probable cause and exigent circumstances. *See State v. Christopher*, 757 N.W.2d 247, 249 (Iowa 2008) (noting one exception to the requirement a search must be conducted pursuant to a valid search warrant is where the search is based upon "probable cause and exigent circumstances").[6] "The standard for probable cause is whether a person of reasonable prudence would believe a crime has been committed or that evidence of a crime might be located in the particular area to be searched." *State v. Kern*, 831 N.W.2d 149, 174 (Iowa 2013) (citation omitted). "Exigent

---

[6] The State also argues Allen makes only passing reference to this claim and thus it has been waived. *See State v. Louwrens*, 792 N.W.2d 649, 651 n.1 (Iowa 2010) ("[P]assing reference to an issue, unsupported by authority or argument, is insufficient to raise the issue on appeal."). Further, the State argues the strip search was a lawful search incident to arrest. "The warrant exception of a search incident to an arrest does not require that the arrest precede the search 'if it is substantially contemporaneous with it, provided probable cause for the arrest existed at the time of the search.'" *State v. Evans*, No. 15-0616, 2016 WL 5408303, at *5 (Iowa Ct. App. Sept. 28, 2016) (quoting *State v. Peterson*, 515 N.W.2d 23, 25 (Iowa 1994)). The State argues, for the reasons outlined above—namely, the information received from the confidential informant including the reported location of the contraband, Allen's arrival by bus without luggage, Allen's consent to a search of his person and subsequent refusal to spread his legs during the search, and the police dog's indication on Allen's seat yet no contraband was found in the vehicle—the circumstances supported a reasonable belief that an indictable offense had been committed and Allen was the individual who had committed it. *See State v. Robertson*, No. 06-1263, 2007 WL 2004568, at *3 (Iowa Ct. App. July 12, 2007). The record is unclear at what point Allen was formally placed under arrest. The State notes an officer testified Allen was under arrest when he was transported to the police station. In his briefing, Allen states he was arrested at the scene of the traffic stop and then taken to the police station. Although, in his reply brief, he states he was "remov[ed] to the police station and arrest[ed]," and later refers to the "arrest or detention of [himself] when he was taken to the [police station] and subjected to a strip search." One officer's report generally indicates Allen was booked after being strip searched and interviewed. The State argues that, regardless, Allen was arrested and charged following the strip search. *See Evans*, 2016 WL 5408303, at *6 ("In respect to the second requirement—whether the arrest was contemporaneous with the search—after the marijuana and cocaine were found during the strip search, [the defendant] was then informed by [the officer] that he was being charged with possession with intent in respect to the cocaine, a drug tax stamp violation, and possession of marijuana. We conclude the arrest was contemporaneous with the search.").

circumstances include danger to the officers or others, the risk of escape, or the likelihood that evidence will be concealed or destroyed." *Leydens v. City of Des Moines*, 484 N.W.2d 594, 597 (Iowa 1992).

As noted by the district court, the police officers had received information from a confidential informant that Allen was transporting crack cocaine from Chicago to Waterloo and travelled by bus while concealing the crack cocaine in his pants. Officers observed Allen disembark the bus without luggage, which an officer testified was indicative of a person trafficking narcotics. During the traffic stop, Allen agreed to be searched by an officer, but he refused to spread his legs to enable the officer to search his inner-thigh and groin areas. Finally, the police dog alerted on Allen's seat in the vehicle, indicating the presence and origin of narcotics. We affirm the district court's holding the strip search was a lawful search based upon probable cause and exigent circumstances.[7]

### B.    Ineffective Assistance of Counsel

Allen contends his trial counsel was ineffective in failing to have him present for the trial on the minutes of testimony and for failing to preserve his right to a bench trial. However, in the trial transcript, the district court states, "I guess I'll note for the record that Christopher Ryan Allen, the defendant, is present with [his attorney]." In both of the district court's verdicts, the court indicated Allen "appeared personally along with counsel." Further, Allen spoke on the record at trial. We find the record sufficient and conclude Allen's trial counsel was not ineffective as Allen was present for trial.

---

[7] Allen does not specifically dispute the existence of exigent circumstances. However, we note "[t]he exigent-circumstances exception is important to narcotics investigations because drugs are 'easily destroyed.'" *Kern*, 831 N.W.2d at 174 (citation omitted).

Allen next alleges "that when he waived his right to a trial by jury, he felt he would have a bench trial not a trial on the minutes of evidence." The record is wholly lacking in evidence to address this claim; accordingly, we preserve it for postconviction-relief proceedings.

In his pro se briefing, Allen summarily claims that, insofar as his trial counsel did not preserve error on his claims—including his claim the traffic stop was pretextual—his counsel was ineffective. Allen fails to present any argument in support of this claim. Having concluded above there was probable cause for the vehicle stop based on our supreme court's decisions, nothing in this record supports a finding that counsel was ineffective for failure to argue the stop was unconstitutional.

## IV. Conclusions

We affirm the district court's denial of Allen's motions to suppress. We find Allen's trial counsel was not ineffective in failing to have Allen present at trial, because he in fact was present. We preserve for possible postconviction-relief proceedings his claim that his counsel was ineffective in failing to preserve his right to a bench trial.

**AFFIRMED.**