STATE of Iowa, Appellee,

v.

Frederick W. MARTENS, Appellant.

No. 93–449.

Court of Appeals of Iowa.

June 28, 1994.

Linda Del Gallo, State Appellate Defender, and Shari Barron, Asst. State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Julie H. Brown, Asst. Atty. Gen., and Theresa J. Seeberger, County Atty., for appellee.

Heard by SACKETT, P.J., and CADY and HUITINK, JJ.

CADY, Judge.

We are asked in this appeal to consider defendant's claims that he was incompetent to stand trial and was denied effective assistance of counsel at trial. We conclude he was competent to be tried and was not burdened with ineffective counsel. We affirm his conviction on two counts of sexual abuse in the third degree.

In November 1991 the State charged Frederick Martens with sexually abusing the fifteen-year-old daughter of his live-in girl friend. Martens reacted to the charge by entering a "disassociative" state and displaying selective memory as he had done when confronted with other stressful situations in the past. In response to a subsequent motion for a competency hearing, he was ordered to undergo an evaluation at the Iowa Medical and Classification Center (IMCC).

The first of three competency hearings was held on October 9, 1992. Martens called psychologist Kevin J. Middleton in support of his contention that he was not competent to stand trial. Middleton diagnosed Martens with psychogenic amnesia, a stress or trauma induced loss of memory. He testified Martens was currently functioning at a low level,

which was inconsistent with his ability to communicate and his history of owning and operating a business. Middleton also testified Martens had at least a rudimentary understanding of the charges against him and of the legal system. He did not believe the amnesia precluded the defendant from assisting his attorney in his defense. Psychiatrist Curtis Fredrickson testified on behalf of the State. He agreed Martens suffered from psychogenic amnesia. He testified Martens was "adequately competent" to proceed to trial. The district court found Martens competent.

Martens moved for a second competency hearing on December 14, 1992, the morning the trial was scheduled to begin. Following the hearing, the district court determined Martens should undergo another evaluation at IMCC.

On January 26, 1993, the court held another competency hearing. The only new evidence presented was an updated report from IMCC, which stated Martens was "being returned to the court as adequately or marginally competent." Martens' memory loss was seen as a psychological defense mechanism with no definitive treatment. Fredrickson wrote, "it would appear to be best to proceed with legal matters if at all possible." The court concluded Martens was competent to stand trial.

At trial, the minor victim testified Martens repeatedly touched her vagina, including digital penetration, during the four years Martens lived with her mother. The child also testified Martens had on at least one occasion apologized to her and promised to stop touching her. On cross-examination, the girl testified she hated Martens. She believed he interfered with the prospect of her parents' reconciliation. The girl's mother testified she did not observe any inappropriate contact between Martens and her daughter, but admitted Martens told her shortly after the charges were brought that he had inappropriately touched the girl. Dr. Kathleen Opdebeeck, a developmental pediatrician, testified she examined the minor and noted that her hymen was enlarged, easily admitting two fingers. She also indicated there was an erosion at the five o'clock position of the hymen. She testified her observations were consistent with, but not diagnostic of, digital penetration.

Martens was convicted as charged. On appeal, he contends his amnesia rendered him incapable of assisting in his defense. He also contends his trial counsel was ineffective in failing to object to remarks made by the prosecutor during closing arguments. He believed the remarks improperly vouched for the victim's veracity and introduced new evidence.

## I. Competency to Stand Trial

 The law presumes an accused is competent to stand trial. *Jones v. State,* 479 N.W.2d 265, 270 (Iowa 1991). The burden to prove incompetency rests with the accused. *Id.* If the evidence is in equipoise, the presumption of competency prevails. *Id.* The test of competency to stand trial is whether the accused appreciates the charge, understands the proceedings, and can effectively assist in the defense. *State v. Lyon,* 293 N.W.2d 8, 9 (Iowa 1980); Iowa Code section 812.3 (1991). The conviction of an incompetent defendant is prohibited by the due process clause and contrary to the fundamental precept of a fair trial. *Lyon,* 293 N.W.2d at 12; *Pate v. Robinson,* 383 U.S. 375, 385, 86 S.Ct. 836, 842, 15 L.Ed.2d 815, 822 (1966).

 Our review is de novo. *State v. Emerson,* 375 N.W.2d 256, 261 (Iowa 1985). We consider the totality of the circumstances. *Id.* Defendant's central challenge is that his psychogenic amnesia rendered him unable to aid in his defense. While all circumstances remain important in our analysis, we find from the evidence that defendant understood the proceedings against him and appreciated the charge. We focus on defendant's inability to assist in his defense.

 Amnesia about events surrounding a charge does not automatically render a defendant incompetent to stand trial. *Emerson,* 375 N.W.2d at 261. Rather, each case rests with its own particular facts. The nature and extent of defendant's impairment must be considered as it impacts a variety of factors, including:

1. The defendant's ability to testify and otherwise participate in his or her defense;

2. Whether the amnesia is temporary or permanent;

3. Whether the crime and defendant's whereabouts at the time of the crime can be reconstructed without the defendant's testimony, including any facts giving rise to a defense;

4. Whether access to the prosecutor's files would assist in preparing for trial;

5. The strength of the prosecutor's case against the defendant.

*United States v. Rinchack*, 820 F.2d 1557, 1569 (11th Cir.1987); *accord Wilson v. United States*, 391 F.2d 460, 464 (D.C.Cir.1968).

We first consider the nature and extent of defendant's impairment. Defendant suffers from psychogenic amnesia. This type of amnesia is described as a defense mechanism more than a mental illness. It is a way of dealing with a traumatic incident too overwhelming to confront. Psychogenic amnesia is the mind's unconscious attempt to erase the recollection of an event. *See State v. Brooks*, 25 Ohio St.3d 144, 495 N.E.2d 407, 412 (1986). There is no definitive treatment to restore the memory. In this case, defendant was unable to recall the events surrounding the crime. He also experienced some regression to child-like behavior. He was unable to provide factual assistance in his defense and was little help to his attorney. Defendant experienced psychogenic amnesia in the past in response to marital and financial problems.

The first factor to consider is defendant's ability to testify and participate in his defense. It is clear the amnesia eventually rendered defendant incapable of taking the stand and providing any helpful testimony in his defense. It is important, however, to consider amnesia in relationship to the trial process. In a way, the inability to personally testify about the facts of an incident is a disability shared to some degree by many defendants due to natural memory attrition or the failure to observe. *State v. McIntosh*, 137 Wis.2d 339, 404 N.W.2d 557, 561 (App. 1987). Each case, of necessity, must be decided on the available evidence. *Id.*

The second factor is whether the amnesia is temporary or permanent. If temporary, postponement of the trial may offer a solution. *Id.* 404 N.W.2d at 562. Defendant came out of his disassociated condition on two occasions following the time the abuse was originally reported, but has been mired in his amnesia state since January 1992. There is no clear and ready treatment to return his memory, although, ironically, resolution of the criminal case may offer some assistance. Defendant did speak to an attorney before falling victim to his present long-term disassociated state, but there was no evidence that he provided his attorney any assistance in his defense. *See United States v. Villegas*, 899 F.2d 1324, 1343 (2d Cir.1990) (defendant had begun preparing his defense before amnesia started).

The third factor is whether the crime can be reconstructed without defendant's testimony, including any facts giving rise to a defense. In this case, defendant's amnesia did not seriously impede his defense. Child sexual abuse cases involving household members often involve limited evidence. The child in this case testified defendant touched and digitally penetrated her vagina on multiple occasions over a long period of time. Defendant combated the evidence with testimony from several witnesses that the child did not appear to fear him. The child's mother, defendant's wife at the time of trial, testified she never observed inappropriate contact between the defendant and her daughter. Moreover, the child admitted on cross-examination that she hated the defendant and, among other things, disliked the house rules he imposed. Witnesses also testified defendant was employed and appeared normal during the relevant time frame.

The fourth factor is whether the defendant had access to the prosecutor's files. Defendant had the benefit of the State's file in this case.

The final factor is the strength of the State's case against defendant. The child was fifteen years old and was specific in her testimony. A pediatrician who examined the girl testified she had an enlarged hymenal opening with an unusual area of erosion. The expert's findings were consistent with digital penetration. Defendant's wife testified that within a week after the child report-

ed the sexual abuse, the defendant admitted to her that he "touched [the child] where he shouldn't have." Considering the nature of the case, the evidence was substantial.

Although the decision is close, we find from all the circumstances of the case that defendant was competent to stand trial. In particular, we believe defendant's inability to recall the events surrounding the crime and his limitations in assisting his attorney did not significantly impact his defense. Defendant had access to the prosecutor's file and produced a vigorous defense, just as the State put forth a strong case under the circumstances. The defense confronted each aspect of the State's case, including the credibility of the complaining witness. We affirm the trial court on the competency issue.

## II. Effective Assistance of Counsel

Defendant's final claim is that he was denied effective assistance of counsel based on the failure to object to certain statements by the prosecutor during closing argument. To establish the claim, the defendant must show by a preponderance of the evidence that counsel failed to perform an essential duty, and prejudice occurred. *State v. Risdal,* 404 N.W.2d 130, 131–32 (Iowa 1987). The prejudice standard requires proof of a "reasonable probability that, but for counsel's unprofessional errors, the result would have been different." *State v. Hildebrant,* 405 N.W.2d 839, 841 (Iowa 1987). Our review is de novo. *Id.*

The prosecutor discussed the credibility of the victim at length during closing argument. At one point, the prosecutor mentioned the victim reluctantly testified to the personal medical procedures she underwent, after reporting the sexual abuse, but "she's told you the truth." The prosecutor then implied that the reason the victim finally decided to report the abuse was because "it's true or, as she put it, because she wanted it to stop."

The prosecutor next remarked that sexual abuse of children can occur without the knowledge of other household members. She described perpetrators of sexual abuse as having an addiction, who find ways for the abuse to go undetected. She concluded that perpetrators don't need to instruct their victims not to report the abuse because of a natural reluctance for children to speak about abuse.

We first address the claim that the prosecutor improperly vouched for the victim. The credibility of witnesses is a proper subject for discussion during closing argument. *See United States v. Spivey,* 859 F.2d 461, 466 (7th Cir.1988). A prosecutor may not, however, express or imply his or her personal belief in the truth or falsity of the testimony of a witness. *State v. Williams,* 334 N.W.2d 742, 745 (Iowa 1983); *see also* ABA Standards for Criminal Justice 3–5.8(b) (2d ed. 1980); Iowa Code of Professional Responsibility for Lawyers DR 7–106(C). This conduct poses two dangers. It may jeopardize the defendant's right to be tried solely on the evidence at trial by conveying the impression there is evidence not presented before the jury, but known to this prosecution, which supports the charges. *United States v. Young,* 470 U.S. 1, 18, 105 S.Ct. 1038, 1048, 84 L.Ed.2d 1, 14 (1985). Secondly, vouching for a witness may induce the jury to trust the judgment of the prosecutor rather than their view of the evidence since the prosecutor's opinion carries the imprimatur of the Government. *Id.* at 18–19, 105 S.Ct. at 1048, 84 L.Ed.2d at 14. Closing argument, therefore, must be tied to evidence in the case. *Williams,* 334 N.W.2d at 744. An argument amounts to impermissible vouching if the jury could reasonably believe the prosecutor was expressing a personal belief in the credibility of a witness, either through explicit personal assurances or implicit indications that information not presented to the jury supports the witness. *Id.; United States v. Bowie,* 892 F.2d 1494, 1498 (10th Cir.1990).

The comments in this case did not impermissibly express or imply that the prosecutor could verify the truthfulness of the victim's testimony. Viewed in context, the comments related to the credibility of the victim based on the evidence. As a part of the many reasons offered by the prosecutor during closing argument to support the victim's credibility, the prosecutor expressed that the victim testified truthfully due to the personal subject matter of her testimony and because

she wanted the abuse to stop. These two matters were covered by the evidence. The focus of the statements by the prosecutor was on the motive and credibility of the witness as demonstrated by the testimony, not her personal opinion. *See Commw. v. Marangiello,* 410 Mass. 452, 573 N.E.2d 500, 508 (1991).

■ We next address the claim that the prosecutor improperly created evidence. A defendant may be deprived of a fair trial when counsel creates evidence during argument, or creates it by argument. *State v. Deases,* 479 N.W.2d 597, 601 (Iowa App. 1991). The test is whether the comments are founded upon relevant evidence or a legitimate inference from the evidence.

The victim estimated during cross-examination by defense counsel she was abused by defendant in excess of 125 times over a period of several years. She testified the abuse occurred when others were in the house. Her credibility was a central issue at trial. Like the claim of improper touching, the challenged comments of the prosecutor approached the line of impropriety, but did not cross it. They constituted a fair inference from all the evidence in the case. Counsel are allowed latitude in arguing their case to the jury and expressing reasonable inferences from the evidence. *State v. Mulder,* 313 N.W.2d 885, 892 (Iowa 1981).

We conclude that counsel was not ineffective for failing to object to the arguments of the prosecutors. The line between acceptable and improper advocacy is not easily drawn. *Young,* 470 U.S. at 7, 105 S.Ct. at 1042, 84 L.Ed.2d at 7. A gray area exists which can make improper argument difficult to detect. Our decision is very close, but we do not believe the failure to object amounted to ineffective counsel. We also conclude that no prejudice resulted from the comments. The record showed the jury was instructed to decide the case based on the evidence, and were further instructed that the statements and arguments of counsel were not evidence. The disputed statements of the prosecutor expressed or implied no extra record knowledge, and substantial evidence existed to support the conviction.

**AFFIRMED.**

HUITINK, J., concurs.

SACKETT, P.J., dissents.

SACKETT, Judge, dissenting.

The majority correctly states:

Amnesia about events surrounding a charge does not automatically render a defendant incompetent to stand trial. *State v. Emerson,* 375 N.W.2d 256, 261. Rather, each case rests with its own particular facts. The nature and extent of defendant's impairment must be considered as it impacts a variety of factors, including:

1. The defendant's ability to testify and otherwise participate in his or her defense;

2. Whether the amnesia is temporary or permanent;

3. Whether the crime and defendant's whereabouts at the time of the crime can be reconstructed without the defendant's testimony, including any facts giving rise to a defense;

4. Whether access to the prosecutor's files would assist in preparing for trial;

5. The strength of the prosecutor's case against the defendant.

*United States v. Rinchack,* 820 F.2d 1557, 1569 (11th Cir.1987); *accord Wilson v. United States,* 391 F.2d 460, 464 (D.C.Cir.1968).

The majority also recognizes Defendant's impairment renders him incapable of taking the stand and testifying. I find the Defendant's lack of memory curtails his ability to assist with the defense. Defendant's lack of memory makes it impossible for him to reconstruct whether he was present at the crime scene and to build his defense.

The State's case is based almost entirely on the testimony of the alleged victim. I would find Defendant was not competent to stand trial.