**IN THE COURT OF APPEALS OF IOWA**

No. 13-1360
Filed August 13, 2014

**CARLOS DAVIS,**
        Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Polk County, Lawrence P. McLellan, Judge.

        An applicant appeals the district court decision denying his application for postconviction relief from his convictions for second-degree and third-degree sexual abuse.  **AFFIRMED.**

        Alfredo Parrish of Parrish, Kruidenier, Dunn, Boles, Gribble & Gentry, L.L.P., Des Moines, for appellant.

        Thomas J. Miller, Attorney General, Kevin Cmelik, Assistant Attorney General, John P. Sarcone, County Attorney, and Nan Horvat, Assistant County Attorney, for appellee State.

        Considered by Danilson, C.J., and Potterfield and McDonald, JJ.

**POTTERFIELD, J.**

Carlos Davis appeals the district court decision denying his application for postconviction relief from his convictions for second-degree and third-degree sexual abuse. Davis has raised several different claims alleging he received ineffective assistance of counsel during his criminal trial. After considering all of the claims of ineffective assistance of counsel raised by Davis in the postconviction relief action, we conclude he has failed to show he received ineffective assistance of counsel. We affirm the decision of the district court denying his request for postconviction relief.

### I.    Background Facts & Proceedings

Carlos Davis was charged with sexual abuse in the second degree and sexual abuse in the third degree. The State alleged Davis had engaged in sex acts with his adopted daughter, M.D., over a number of years. Davis adopted the child after her parents' rights were terminated. Later, however, Davis and the child's biological mother were married. M.D. testified Davis told her that if she told anyone about the sex acts he would no longer permit her to have contact with her biological mother or something bad would happen to her. M.D.'s sister, K.K., testified she observed Davis and M.D. engaged in what she believed was a sex act. K.K. also stated M.D. told her Davis was sexually abusing her, but they could not tell anyone.

During the criminal trial evidence was presented that M.D.'s mother had genital warts and had sexual contact with Davis. Dr. Linda Railsback testified M.D. had papules that were consistent with genital warts, also known as the human papilloma virus (HPV). HPV is spread by skin-to-skin contact. While

there was no evidence Davis had genital warts, Dr. Railsback testified a person could transmit the virus without having symptoms of it. Dr. Railsback also testified M.D. had a torn or disrupted hymen, which was consistent with sexual intercourse.

After a jury trial, Davis was convicted of the offenses. The district court denied Davis's motion for a new trial. Davis was sentenced to terms of imprisonment not to exceed twenty-five years and ten years, respectively, to be served consecutively. Davis's convictions were affirmed on appeal. *See State v. Davis*, No. 05-1306, 2006 WL 3331019 (Iowa Ct. App. Nov. 16, 2006).

Davis filed an application for postconviction relief. He claimed he received ineffective assistance because defense counsel: (1) failed to object to inflammatory and prejudicial statements made during closing arguments; (2) failed to present evidence to show Davis did not have genital warts; (3) failed to adequately investigate his employment records; and (4) failed to call Debbie Coady as a witness. After a hearing the court determined Davis had not shown he received ineffective assistance and denied his request for postconviction relief. Davis now appeals.

## II.    Standard of Review

We review claims of ineffective assistance of counsel de novo. *Ennenga v. State*, 812 N.W.2d 696, 701 (Iowa 2012). To establish a claim of ineffective assistance of counsel, an applicant must show (1) the attorney failed to perform an essential duty, and (2) prejudice resulted to the extent it denied the applicant a fair trial. *State v. Carroll*, 767 N.W.2d 638, 641 (Iowa 2009). An applicant has

the burden to show by a preponderance of the evidence counsel was ineffective. *See State v. McKettrick*, 480 N.W.2d 52, 55 (Iowa 1992).

### III. Discussion

### A. Closing Arguments

Davis claims he received ineffective assistance because defense counsel did not object to multiple instances of prosecutorial misconduct during closing arguments. "In closing arguments, counsel is allowed some latitude." *State v. Thornton*, 498 N.W.2d 670, 676 (Iowa 1993). "Counsel may draw conclusions and argue permissible inferences which reasonably flow from the evidence presented." *Id.* A prosecutor, however, has no right to create evidence or misstate facts. *State v. Carey*, 709 N.W.2d 547, 554 (Iowa 2006). Furthermore, a prosecutor may not express the prosecutor's personal beliefs. *State v. Graves*, 668 N.W.2d 860, 874 (Iowa 2003). A prosecutor should not make inflammatory or prejudicial statements about a defendant. *Id.* Additionally, the prosecutor's arguments should not "divert the jury from its duty to decide the case on the evidence." *State v. Musser*, 721 N.W.2d 734, 755 (Iowa 2006).

1. Davis first claims he received ineffective assistance because defense counsel did not object when the prosecutor distorted the burden of proof. During closing arguments the prosecutor stated:

> Now, the Court told you that in order to find somebody guilty, you have to be convinced beyond a reasonable doubt. You have to be firmly convinced, but you don't have to be convinced beyond all doubt. You don't have to have a video of this like they have on TV. If in your gut you are firmly convinced that this defendant committed the crime, you are satisfied beyond a reasonable doubt. You don't go hunt for doubt. You don't go look for doubt. You are satisfied and you must hold him accountable for what he did.

In Davis's motion for new trial he argued the prosecutor committed prosecutorial misconduct by urging the jury to convict him if they felt "in your gut" he committed the offenses, rather than basing their decision on the facts presented and the law of the case. The issue was argued during the sentencing hearing. The court denied the motion for a new trial, stating, "I don't believe there was any prosecutorial misconduct; and if there was any concern about the statement during closing argument, the Court was not given an opportunity to correct that, but I don't think it was improper anyway."

We agree Davis has not shown the prosecutor's argument was improper. The prosecutor connected his statement regarding "gut feeling" to the proper "firmly convinced" language contained in the jury instruction on reasonable doubt.[1] We determine Davis has failed to show he was prejudiced by defense counsel's failure to object to the prosecutor's statement about reasonable doubt during the closing arguments. Prejudice is established by showing there is a reasonable probability the result of the proceeding would have been different, but for errors by defense counsel. *State v. Pace*, 602 N.W.2d 764, 774 (Iowa 1999). Our court has previously concluded a prosecutor's closing argument that the jury should follow its "gut feeling" was not prejudicial where proper instructions were given and the State's case was strong:

> Further, when we consider the record as a whole, the alleged comment could not have misled the jurors into applying a lower standard of proof than beyond a reasonable doubt. The trial court instructed the jury it was to base its verdict only upon the evidence and the instructions given by the court. The instructions

---

[1] As an aside, we note Davis has not claimed the jury instruction on reasonable doubt was improper. Therefore, we can conclude the jury was properly instructed on the concept of reasonable doubt.

identified the correct standard of proof, beyond a reasonable doubt, and accurately defined that standard. We find this was sufficient to dispel any potential confusion which might have been caused by the prosecutor's alleged comment. *See State v. Hardin,* 569 N.W.2d 517, 522 (Iowa Ct. App. 1997).

*State v. Reeves*, No. 13-0908, 2014 WL 2884864, at *4 (Iowa Ct. App. June 25, 2014) (quoting *State v. Morris*, No. 98-1640 200 WL 381641, at *9 (Iowa Ct. App. Apr. 12, 2000)).

2.  When M.D. was first questioned by a police officer and a social worker about the report of sexual abuse, she told them Davis had engaged in sex acts with her about three times each year while she was twelve, thirteen, and fourteen. During the criminal trial, M.D. testified, "I can't tell you the exact how many times, but there was, like, a lot." On cross-examination M.D. stated she had not been truthful in stating it happened three times because "it was probably more than that."

During closing argument the prosecutor stated:

> And the defense makes a big deal cross-examining [M.D.] and the detective and DHS about "three times." To a kid "a lot" maybe is three times. One time is too much. She tells you in court it happened a lot. "I told them at least three because it happened at least three."
>
> If you decide to acquit him because "three" is different than the word "a lot," then we have wasted all of our time. That is not impeachment. That is a kid being approached out of the blue about something that's very personal by people who don't know her and couldn't possibly have understood what's going on in this household.

Davis contends defense counsel should have objected to these statements by the prosecutor because, in essence, the prosecutor was telling the jury that the issue of witness credibility was a waste of their time. A review of the record shows defense counsel attempted to impeach M.D. based on her different

statements about the number of times she was sexually abused by Davis. The prosecutor properly addressed this issue during closing arguments. We do not believe the prosecutor was arguing the issue of the credibility of witnesses was a waste of time, but instead the prosecutor was arguing the defense had not adequately impeached M.D.'s testimony.

Additionally, Davis has not shown by a preponderance of the evidence that the result of the trial would have been different if defense counsel had objected to the statements. *See Ledezma v. State*, 626 N.W.2d 134, 145 (Iowa 2001). Davis needed to show the probability of a different result was sufficient to undermine confidence in the outcome of his criminal trial. *See State v. Brubaker*, 805 N.W.2d 164, 174 (Iowa 2011). We conclude that even if defense counsel had objected there was not a reasonable probability the jury would have had a reasonable doubt respecting Davis's guilt. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984) ("When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."). This was not a close case. M.D.'s testimony was corroborated in several key respects by the testimony of her mother and K.K. We conclude Davis has not shown he received ineffective assistance of counsel on this ground.

3. Davis claims the prosecutor made improper statements during closing arguments by vouching for the credibility of the State's witnesses. At one point the prosecutor noted a witness's testimony about M.D.'s demeanor at school when she thought she was pregnant. The prosecutor stated, "Holy cow, folks, that's not something you manufacture. You do not manufacture upset and

emotions about pregnancy as an eighth-grader." The prosecutor also stated eighth-graders "don't say biologically correct words like you hear on talk shows. So that is not a way to judge the credibility of a kid who is coming to court." Furthermore, the prosecutor stated, "Doctor Railsback is by far a finer expert than you will see in most any other circumstances."

"The credibility of witnesses is a proper subject for discussion during closing argument." *State v. Martens*, 521 N.W.2d 768, 772 (Iowa Ct. App. 1994). "A prosecutor may not, however, express or imply his or her personal belief in the truth or falsity of the testimony of a witness." *Id.* A prosecutor may argue about a witness's credibility based on specific evidence in the case. *Graves*, 668 N.W.2d at 875. A prosecutor may make arguments based upon common sense and "the reasonable inferences and conclusions to be drawn from the evidence." *Carey*, 709 N.W.2d at 554-55.

We determine the prosecutor in this case made proper arguments about the credibility of witnesses based on the evidence in the case. The prosecutor's statements do not personally vouch for the credibility of the witnesses.

Furthermore, on this ground as well, we determine Davis has not shown prejudice. Davis has not shown that if defense counsel had objected to the prosecutor's statements about the credibility of witnesses the result of his criminal trial would have been different. *See Ledezma*, 626 N.W.2d at 143. We conclude Davis has not shown he received ineffective assistance due to defense counsel's failure to object to the statements by the prosecutor.

4. In discussing the testimony of K.K. that she observed Davis pushing M.D.'s head towards his lap and then he told K.K. to leave the room to

do a chore, the prosecutor stated, "Can you imagine what it must be like to have that kind of a burden on you and to know you have to leave the room, there is no way you can help your sister?" Davis claims he received ineffective assistance because defense counsel did not object on the ground the prosecutor told the jurors to put themselves in the situation of K.K.

A prosecutor should not ask the jury "to place themselves in the position of the victim." *Musser*, 721 N.W.2d at 754; *see also State v. Vickroy*, 205 N.W.2d 748, 751 (Iowa 1973) (noting a prosecutor should not inflame the fears, passion, and prejudice of the jury by urging the jurors to place themselves in a hypothetical position of peril). Although the prosecutor improperly asked the jurors to place themselves in the position of K.K., we determine Davis has not shown he was prejudiced by defense counsel's failure to object to the prosecutor's statement. Davis has not shown the result of the trial would have been different if defense counsel had objected. This was a single statement and the remainder of the prosecutor's closing argument asked the jury to decide the case based on the evidence. We do not believe this statement alone would have caused the jury to convict Davis based on fears, passion, or prejudice, rather than the evidence.

5. At the beginning of her rebuttal closing argument, after defense counsel's closing argument, the prosecutor stated, "It's a good thing the Court continues to remind you that what the lawyers say isn't evidence; all right? So what I say is a review of the evidence." Davis claims the prosecutor was making an improper comment impugning the integrity of defense counsel, and defense counsel should have objected to the statement.

We first note defense counsel said something similar during opening statements, "It is important that you keep in mind what you just heard is not evidence, but merely the State's opinion as to what the evidence will show. In all fairness, what I'm telling you is not evidence." The jury was specifically instructed "[s]tatements, arguments, questions and comments by the lawyers," were not to be considered as evidence. The prosecutor's reiteration of this principle was not an improper comment impugning the integrity of defense counsel, and defense counsel had no obligation to object to the statement.

6.　　Finally, Davis claims he received ineffective assistance because defense counsel did not object when the prosecutor made an improper inference that he was guilty based on the fact he had been arrested. The prosecutor stated:

> You know that the defendant was arrested. There's a no-contact order in place, and all of a sudden everybody's off depression medicine. They feel a lot better about themselves, and they're able to talk about it as much as they can.

Considering the prosecutor's statement in context, the prosecutor was not asking the jury to find Davis guilty because he had been arrested. The prosecutor was merely mentioning that after Davis left the home, the children felt better. This was not an improper inference concerning Davis's guilt based on something other than the evidence presented in the case. We conclude Davis has not shown he received ineffective assistance due to defense counsel's failure to object to the statement.

In summary, we conclude Davis has not shown he received ineffective assistance due to defense counsel's failure to object to the prosecutor's closing argument.

### B. Investigation & Presentation of Defense

"[C]laims of ineffective assistance involving tactical or strategic decisions of counsel must be examined in light of all the circumstances to ascertain whether the actions were a product of tactics or inattention to the responsibilities of an attorney guaranteed a defendant under the Sixth Amendment." *Ledezma v. State*, 626 N.W.2d 134, 143 (Iowa 2001). "While strategic decisions made after 'thorough investigation of law and facts relevant to plausible options are virtually unchallengeable,' strategic decisions made after a 'less than complete investigation' must be based on reasonable professional judgments which support the particular level of investigation conducted." *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 690-91 (1984)). "The accompanying investigation must be reasonable under the circumstances." *Id.* "Moreover, there can be a point when the tactical or strategic decisions made by counsel from a host of competing options fall outside the broad scope of a reasonably competent attorney." *Id.*

1. Davis contends defense counsel should have presented the testimony of Dr. David Borchardt to support his claim he did not have genital warts. Dr. Borchardt did a visual inspection of Davis's genitals on December 27, 2004, and stated in a deposition he did not find any evidence of genital warts. Davis believes the result of the trial might have been different if defense counsel had presented this evidence.

At the postconviction hearing defense counsel gave several different reasons for not calling Dr. Borchardt as a witness. First, defense counsel had information Davis had not informed Dr. Borchardt he had previously been diagnosed with a different sexually transmitted disease, genital herpes. Defense counsel believed Davis's failure to give a complete medical history would have opened the door to stronger cross-examination of Dr. Borchardt and created credibility problems for Davis. Second, Dr. Railsback had already testified a person could be a carrier for genital warts without having symptoms of the disease. Defense counsel believed Dr. Borchardt's testimony would not have negated the inference that Davis might have been a carrier of HPV. Third, defense counsel believed he had established reasonable doubt through the cross-examination of the State's witnesses. He stated, "And the risk of putting on the case and losing what I believed the momentum or the doubt we had was outweighed by us resting."

We determine defense counsel acted reasonably and strategically in deciding not to call Dr. Borchardt to testify in Davis's criminal trial. The doctor's testimony would have done little to rebut the inference that Davis could have been a carrier of HPV, although there was no evidence he had genital warts, and had exposed M.D. to the virus. Moreover, as defense counsel pointed out at the postconviction hearing, there were several risks associated with presenting the testimony of Dr. Borchardt. We conclude Davis has not shown he received ineffective assistance due to defense counsel's decision not to present the testimony of Dr. Borchardt.

2.    Davis claims defense counsel should have investigated and presented an alibi defense.    He contends defense counsel should have presented evidence of his work schedule, which he asserts shows he was working at times M.D. claimed Davis had committed sexual abuse.  He claims defense counsel should have called his supervisor or his employer's records custodian as witnesses at the criminal trial.

The trial information alleged Davis committed sexual abuse in the second degree on or about December 26, 2000, to December 26, 2002, and sexual abuse in the third degree on or about December 26, 2002, to September 21, 2004.  At the criminal trial, M.D. did not testify to sex acts with Davis on any specific dates.  Furthermore, the jury instructions did not require the jury to find Davis had committed sex acts on any specific dates.  Therefore, the fact Davis worked at certain times on certain dates would not have created an alibi for the claim he sexually abused M.D. during the range of dates found in the trial information.   We conclude Davis has not shown he received ineffective assistance because defense counsel did not seek to admit his work schedule during the criminal trial.

3.    Davis contends defense counsel should have called his neighbor, Debbie Coady, as a witness.  At the postconviction hearing Coady testified she observed M.D. "making suggestive remarks to men that were laying cement." Coady also stated that through a window she saw M.D. "dancing on the dining room table in front of some man that her mom had brought home."  Coady stated she saw M.D. hanging on an unknown gentleman.  Davis believes this evidence would have impugned M.D.'s credibility.

Davis testified at the postconviction hearing that defense counsel "thought that Deb Coady was too hostile. He didn't want to use her, so he didn't contact her." On our review of the record, we conclude the proposed testimony of Coady was not relevant to the issue at the criminal trial, which was whether M.D. had been sexually abused by Davis. Davis has not shown he received ineffective assistance due to counsel's failure to call Coady as a witness at the criminal trial.

## IV.    Conclusion

After considering all of the claims of ineffective assistance of counsel raised by Davis in the postconviction relief action, we conclude he has failed to show he received ineffective assistance of counsel. We affirm the decision of the district court denying his request for postconviction relief.

**AFFIRMED.**