# IN THE COURT OF APPEALS OF IOWA

No. 16-0126
Filed July 6, 2017

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**PHILLIP LEROY SMITH,**
      Defendant-Appellant.

_____

Appeal from the Iowa District Court for Decatur County, Dustria A. Relph, Judge.

A defendant appeals his conviction asserting juror misconduct and ineffective assistance of counsel. **AFFIRMED.**

Unes J. Booth of Unes J. Booth Law Firm, P.C., Osceola, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Heard by Vogel, P.J., and Doyle, and McDonald, JJ.

**VOGEL, Presiding Judge.**

Phillip L. Smith appeals the district court's decision denying his motion for a new trial following his conviction for sexual abuse in the third degree, in violation of Iowa Code section 709.4(1) (2014). He asserts the district court abused its discretion in concluding the jury foreperson did not commit misconduct when the foreperson failed to disclose that he knew the defendant was on the sex offender registry. He also claims his attorney provided ineffective assistance when counsel failed to object to alleged prosecutorial misconduct. For the reasons stated herein, we affirm his conviction but preserve his claims of ineffective assistance of counsel for postconviction relief.

## I. Background Facts and Proceedings

In November 2014, the victim reported to police Smith sexually assaulted her in her apartment on October 18th. Before Smith's trial began in October 2015, the district court ruled that mention of Smith's prior bad acts would be inadmissible.

During voir dire, a potential juror was asked generally if he knew the parties involved or if there was anything that would cause him pause if he were to serve on the jury. While the juror seemed to recognize Smith's name, he did not remember in what context he had heard the name, so he did not say anything to the court or the attorneys. The juror in question was chosen for the jury. Later, during the first day of trial, the juror remembered he had seen Smith's name on the sex offender registry a few months prior. However, the juror did not alert the court of his knowledge. The juror was later named jury foreperson.

Two witnesses testified at trial: the victim and the police officer who interviewed both the victim and the defendant as part of his investigation. The prosecutor questioned the investigating officer about the consistency of the victim's statements and the nature of Smith's statements. The officer testified the victim's written statement of the incident was consistent with the oral statement she later gave. The officer testified that Smith's statements during the investigation were "strange," saying it was "almost like a Freudian slip" when Smith said "when I was done—when we was done" referring to the sex act with the victim. The officer testified that Smith told him he waited around after the incident to see if the victim was all right, which the officer testified also seemed strange. The officer testified that he questioned "[w]hy would you wait around after making love to somebody to see if it was all right?" The prosecutor also asked the officer if he thought the victim only disclosed the assault after she discovered she was pregnant—about six weeks later. The officer responded that he did not think that was the reason she reported the incident.

During her closing argument, the prosecutor referenced the officer's testimony about the victim's consistent statements and that that victim did not seem like someone who was fabricating her story. The prosecutor also brought up a recent *Dateline* story about sexual assault victims who do not come forward for years after their alleged abuse, as a way of explaining the fact that the victim in this case waited several weeks to report her assault to the police.

After deliberating approximately thirty minutes, the jury returned a guilty verdict. The jury took only one vote, unanimously convicting Smith as charged. The following evening the jury foreperson telephoned the trial judge at her

residence and stated he and his wife were afraid due to Smith's behavior posttrial and because he was on the sex offender registry. The judge told the foreperson she would email the parties' attorneys with this information. The foreperson also spoke with the prosecutor in her office the next day regarding his information. In response, Smith's counsel filed a motion for new trial, asserting juror misconduct invalidated the guilty verdict under Iowa Rule of Criminal Procedure 2.24(2)(b)(2).

An affidavit, agreed upon by both the State and Smith, was sent to all the jurors, inquiring, "Did anyone mention or discuss the sex offender registry during the course of the trial?" All jury members answered "no." At the posttrial hearing, the foreperson testified he did not mention his knowledge to anyone on the jury:

> Q. You didn't feel that that [knowledge of the sex offender registry] was relevant in your deliberations, and you just didn't say it? A. What's that?
> Q. His being on the registry. A. It wasn't relevant to what we were talking about, no.

Defense counsel then inquired as to any bias the foreperson may have harbored because of such knowledge.

> Q. It didn't have any bearing at all on whether or not my client was convicted of a sex abuse offense in the past? A. No, because I knew I could give a fair judgment on what was in the trial.

The district court found the foreperson's testimony to be credible and denied Smith's posttrial motions.

Smith appeals his conviction claiming he was denied his constitutional right to a fair trial under the United States Constitution and under article I, section 10 of the Iowa Constitution. He claims he was denied the right to an impartial jury due to the foreperson's alleged misconduct and bias. He also claims

ineffective assistance of counsel due to trial counsel's failure to object to prosecutorial misconduct.

## II. Standard of Review

"We review a denial of a motion for a new trial based upon juror misconduct or juror bias for an abuse of discretion." *State v. Webster*, 865 N.W.2d 223, 231 (2015). The burden of proof is on the party seeking review. *Id.*

Ineffective-assistance-of-counsel claims are reviewed de novo. *State v. Halverson*, 857 N.W.2d 632, 634 (Iowa 2015). The court ordinarily preserves these claims for postconviction relief proceedings in order to fully develop the record through evidentiary hearings. *Id.* We will only review the claims on direct appeal if the record is adequate. *Id.* at 638.

## III. Right to an Impartial Jury

Smith asserts the jury foreperson's failure to disclose his knowledge that Smith was on the sex offender registry amounted to juror misconduct and this juror's knowledge of Smith's status on the registry affected Smith's right to an impartial jury.[1] "Juror misconduct and juror bias are related, overlapping, but analytically distinct concepts." *Webster*, 865 N.W.2d at 232. "Juror misconduct ordinarily relates to action of a juror, often contrary to the court's instructions or

---

[1] In his brief and at oral argument, Smith also claims ineffective assistance of counsel because his trial counsel failed to raise his federal and state constitutional right to a fair trial and impartial jury in his posttrial motion. In the motion for a new trial, defense counsel only raised the issue of the impartial jury under Iowa Rule of Criminal Procedure 2.24(2)(b)(2). However, Smith fails to articulate how the addition of constitutional claims changes the analysis the district court engaged in under rule 2.24(2)(b)(2). Smith also claims ineffective assistance of counsel because his trial counsel failed to request the district court rule regarding the juror's duty to disclose material information during trial before deliberations and the juror's implied bias due to his material information. Due to the inadequacy of the record on direct appeal, to the extent Smith wishes to raise these claims of ineffective assistance of counsel in a postconviction-relief hearing, they are preserved. *See State v. Johnson*, 784 N.W.2d 192, 198 (Iowa 2010).

admonitions, which impair the integrity of the fact-finding process at trial. . . . Juror bias, on the other hand, focuses on the ability of a juror to impartially consider questions raised at trial." *Id.* (citations omitted).

**A.  Jury Misconduct.**  To determine the existence of juror misconduct, the court applies a three-part test:

> (1) evidence from the jurors must consist only of objective facts as to what actually occurred in or out of the jury room bearing on misconduct; (2) the acts or statements complained of must exceed tolerable bounds of jury deliberation; and (3) it must appear the misconduct was calculated to, and with reasonable probability did, influence the verdict.

*State v. Cullen*, 357 N.W.2d 24, 27 (Iowa 1984); *see also Ryan v. Arneson,* 422 N.W.2d 491, 495 (Iowa 1988) (clarifying the first prong through an interpretation of Iowa Rule of Evidence 5.606(b) by excluding any evidence of the internal deliberations of the jury but allowing statements containing extraneous prejudicial information or outside influences that were brought to bear on the jury).

The district court did not find the jury foreperson's actions satisfied the misconduct requirements.  In so concluding, the court found the jury foreperson did not do any outside research, did not share his knowledge with other jurors, and did not bring outside facts into deliberation.

> The jury foreman . . . remembered after he was seated in the jury box as a juror, and at some point after the trial started, that he had seen somewhere on the Internet that the defendant was a registered sex offender.
> [The juror] did not perform any research about the defendant's status as a sex offender during the trial or deliberations.  His testimony was that he remembered that he had seen this at some time ago before the trial.
> The Court finds that [the juror] is credible, and I find that his testimony was credible.  [The juror] did not disclose his recollection of seeing the defendant on the sex offender registry to this Court until after the trial.  [The juror] did not mention his recollection of the

defendant's—his recollection of seeing the defendant was on the sex offender registry to any other juror at any time during the trial or during deliberations. This was confirmed by the notarized questionnaires that were mailed to and received from every other juror. And those questionnaires asked if there was ever any mention made about the sex offender registry during the trial or during deliberations, and every questionnaire was returned with a "no" on it.

In addition, the court concluded the jury foreperson's knowledge could not have reasonably affected the verdict because only one vote was taken and it was unanimous.

> Again, based upon the fact that this knowledge was not shared with any of the other jurors, it was not discussed at any time during deliberations, only one vote was taken and that vote was unanimous, guilty, the Court finds that there is absolutely no reasonable probability that [the juror's] privately retained knowledge of the defendant's status on the sex offender registry had any influence on the verdict

The district court has broad discretion when determining misconduct and its ruling will only be deemed an abuse of discretion if it is clearly unreasonable. *Cullen*, 357 N.W.2d at 27 (citation omitted).

Here, the first prong of the *Cullen* misconduct test is satisfied. Objective evidence was presented by way of the jury foreperson's testimony at the hearing on Smith's motion for new trial. The jury foreperson testified he realized he had seen Smith's name on the sex offender registry sometime during the first day of trial. However, the second prong is not satisfied because the district court found his nondisclosure did not exceed tolerable bounds of jury deliberation. In particular, the district court considered that the foreperson did not share the information with any of his fellow jurors. This conclusion was supported by the juror affidavits, which all confirmed the sex offender registry was not discussed at

any time during the trial. Finally, the third prong is also not satisfied; because the jury foreperson testified that he kept the information to himself, the district court found there was no reasonable probability it influenced the verdict.[2] The court is to use a common sense approach when evaluating whether misconduct influenced the verdict. *State v. Tinius*, 527 N.W.2d 414, 417 (Iowa Ct. App. 1994). The district court's findings were supported by the record, and we find no abuse of discretion in the court's denial of Smith's motion based on juror misconduct.

**B. Juror Bias.** "Juror bias . . . focuses on the ability of a juror to impartially consider question raised at trial. A biased juror is simply unable to come to a fair decision in a case based upon the facts and law presented at trial." *Webster*, 865 N.W.2d at 232. Juror bias can be actual or implied. *United States v. Wood*, 299 U.S. 123, 133 (1936). It can be supported by statements made after the jury reaches a verdict. *State v. Cuevas*, 288 N.W.2d 525, 535 (Iowa 1980). Bias can also be supported by the reasonable belief that the jury member is biased. *See State v. Carey*, 165 N.W.2d 27, 30 (Iowa 1969).

The jury foreperson testified that because he lives in a small community, he routinely checks the sex offender registry in order to protect his children. The district court is given broad discretion in fact-finding, and it found the jury foreperson's testimony believable when he said he was able to keep his knowledge of the sex offender registry separate from the trial.

> [The juror] testified that the defendant's status on the sex offender registry had no bearing on him and he was able to, quote,

---

[2] The juror also did not purposely position himself to become the foreperson. He stated he was named foreperson because he just happened to sit at the head of the table.

give a fair judgment on what was in the trial. He testified that it did not give him bias and he was able to set aside that knowledge and make a decision based upon only the evidence that was presented in the trial.

The district court is in the best position to judge the credibility of the jury foreperson's testimony. *See Webster*, 865 N.W.2d at 238–39 (deferring to the district court's assessment of the juror's credibility and stating, "The mere fact a juror has knowledge of parties or witnesses does not indicate actual bias or require juror disqualification"). Finding no abuse of discretion, we affirm the district court's denial of Smith's motion for a new trial based on juror bias.

## IV. Prosecutorial Misconduct

Next, Smith argues his counsel was ineffective when counsel failed to object to what he asserts was prosecutorial misconduct. Smith claims the prosecution's actions are reversible error when the prosecutor questioned the investigating police officer in an effort to bolster the victim's credibility and when the prosecutor made improper statements during closing arguments.

In order to succeed on an ineffective-assistance-of-counsel claim, a defendant must prove each of the following two elements by a preponderance of the evidence: (1) trial counsel failed to perform an essential duty and (2) this failure resulted in prejudice. *State v. Dalton*, 674 N.W.2d 111, 119 (Iowa 2004). Both elements must be proven by a preponderance of the evidence. *State v. Keller*, 760 N.W.2d 451, 452 (Iowa 2009).

The first prong of the test is determined by comparing counsel's work "against the standard of a reasonably competent practitioner, with the presumption that the attorney performed his duties in a competent manner."

*State v. Stallings*, 658 N.W.2d 106, 109 (Iowa 2003). To fulfill the second prong, "the defendant must show that, but for counsel's error, there is a reasonable probability that the results of the trial would have been different." *Id.*

In order to determine whether counsel was ineffective in failing to object to prosecutorial misconduct, we must first determine whether prosecutorial misconduct occurred. *State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003). To do so, the court considers the following factors:

> (1) the severity and pervasiveness of the misconduct; (2) the significance of the misconduct to the central issues in the case; (3) the strength of the State's evidence; (4) the use of cautionary instruction or other curative measures; and (5) the extent to which the defense invited the misconduct.

*Id.*; *see also State v. Schlitter*, 881 N.W.2d 380, 394 (Iowa 2016) (making a distinction between prosecutorial misconduct and prosecutorial error and noting the *Graves* multifactor test for prosecutorial misconduct "easily translate[s] to an evaluation of prosecutorial error"). It is the prejudice that is the deciding factor, not the misconduct itself. *Graves*, 668 N.W.2d at 869.

Smith's first claim of prosecutorial misconduct involves the questioning of the police officer who interviewed the victim. The prosecutor asked the investigating officer, "Was the statement that [the victim] provided you consistent with what she had previously told you? A. Yes." Smith states the prosecutor erred when asking this question as it was an attempt to bolster the victim's credibility. Our supreme court has held "it is not proper to . . . ask[] one witness if another witness is untruthful, mistaken, or to otherwise ask the witness to comment on the *credibility* of another witness." *Nguyen v. State*, 707 N.W.2d 317, 325 (Iowa 2005) (emphasis added). However, it does not cross the line for

a witness to comment on the *consistency* of an alleged victim's statements throughout multiple interviews. *State v. Dudley*, 856 N.W.2d 668, 678 (Iowa 2014). The jury is free to use this information to make its decision about the alleged victim's credibility. *Id.*

The defense's trial strategy was to attack the credibility of the victim. In shoring up the victim's version of the incident, the prosecutor inquired of the officer whether the victim's testimony had remained consistent throughout the investigation. There is a fine line between testifying about consistency of information and credibility of the source of the information. *See id.* at 677, 678 (recognizing the "very thin line between testimony that assists the jury in reaching its verdict and testimony that conveys to the jury that the [victim's] out-of-court statements and testimony are credible" and concluding testimony from the investigator that said the victim's "statements were consistent throughout the interview" did not cross the line). The jury was free to use the officer's affirmative answer regarding consistency in making its own decision regarding the credibility of the victim's testimony. *See id.* at 678 ("The jury is entitled to use this information to determine the victim's credibility. This information gives the jury an insight into the victim's memory and knowledge of the facts."). We conclude this questioning did not rise to the level of prosecutorial misconduct.

Next, Smith claims the prosecutor committed misconduct when the officer testified to what he believed to be "strange" behavior by Smith during the interview. The prosecutor asked, "What else did [Smith] tell you?" After the court overruled defense counsel's hearsay objection, the officer testified:

A. If I can put my mind back on the chronology of your question here. He makes a statement to me that is strange. Chronologically, it is almost like a Freudian slip. He says, When I was done—when we was done.

Q. What did that indicate to you? A. Well, that he was initially speaking in first person, speaking "when I was done" and correcting it to say, "When we was done."

Q. Did that indicate to you that this was a joint action between the two of them or something that he was doing? A. Not to me. What he says next is that, "I stayed around and waited for a while to see if it was all right with her," which I thought was strange also. Why would you wait around after making love to somebody to see if it was all right?

Police officers are allowed to testify about their impressions and observations made during an investigation. *See Robeson v. Dilts*, 170 N.W.2d 408, 413 (Iowa 1969) (allowing in a police officer's opinion testimony regarding the course vehicles took in a traffic accident based on his observations on the scene). This testimony was not improper, nor was the prosecutor guilty of misconduct or error when eliciting this testimony. The jury was free to consider the officer's observations about Smith's statements made during the investigation. Trial counsel's failure to object does not fall below standards of a reasonably competent attorney. If Smith's counsel had objected to this testimony, it is likely the outcome of the trial would not have changed.

However, other instances of alleged prosecutorial misconduct are less clear. Smith further argues the prosecutor committed objectionable misconduct when the prosecutor asked the investigating officer:

Q. [Officer], tell me, based on [the victim's] written statement and the interview that you did with her on November 20, 2014, did you believe that a crime had occurred? . . . A. I reserved an open mind at that point.

The prosecutor also asked the officer:

Q. Did [the victim] give you any indication that the only reason she was reporting [the sexual assault] was because of the pregnancy? A. No.

Smith asserts the officer's testimony that he did not believe the pregnancy was the reason for reporting the sexual assault bolstered the victim's later testimony that her pregnancy was not the reason she reported the assault.

Smith also claims the prosecutor committed misconduct during her closing argument on two separate occasions. First, Smith claims the prosecutor bolstered the victim's testimony when she said:

The actions of [the victim] sitting here are not the actions or the emotions of somebody who fabricated a story. I would like to assure you that if this statement of events and if what she told you had been fabricated, it wouldn't have gotten to this point.
As a law enforcement officer, that is [the investigating officer's] job to kind of determine what is believable and what is not believable. Had he not made that assessment, then it never would have gotten to this point.

Next, Smith claims the prosecutor committed misconduct when she referenced information that did not come into trial as evidence. The prosecutor stated in her rebuttal closing argument:

I don't have the exact statistic. I wish I did. I wish I had done a little bit of research. I am here to tell you that the majority of sexual assault cases go unreported.
I don't know if anyone saw *Dateline* last week where they were interviewing the victims of Bill Cosby. I think seventeen to twenty victims who came forward, and most of them said they never called the police. That is not uncommon. I can tell you that. I have seen it. It is not uncommon that women are assaulted, that women are raped, and they never call the police.
You know why that is? Because, unfortunately, our society, we victimize those people. Our society says, "Well, you know what? Because she only said no three times and she didn't kick and scream and try to run away, she deserved it."
I don't know about you, but I don't want to live in a society where no doesn't mean no. I think each and every one of us has a

duty—has a duty to listen to her story, and we have a duty to do justice and do what is right in this case.

Smith asserts all of these instances show an improper concerted effort on the part of the prosecutor to bolster the credibility of the victim by inserting her own outside-of-the-record "research" and opinion. Smith claims counsel was ineffective in failing to object to these statements by the prosecutor. The State concedes in its brief that the prosecutor was wrong to mention the *Dateline* TV show during closing arguments. But the State asserts the prosecutor's statement regarding the investigator's assessment of the believability of the victim was simply inferring that this trial would never had occurred had charges not be filed after the officer's investigation, which included interviewing both the victim and Smith.

The purpose of closing argument is to assist the jury in analyzing, evaluating, and applying the evidence. *State v. Melk*, 543 N.W.2d 297, 301 (Iowa 1995). An attorney can only argue a theory of the case from the evidence admitted at trial. *State v. Elliott*, 806 N.W.2d 660, 674 (Iowa 2011). While a prosecutor is afforded the latitude to draw conclusions and argue permissible inferences derived from the evidence in closing arguments, a prosecutor cannot create evidence. *State v. Shanahan*, 712 N.W.2d 121, 139 (Iowa 2006). The test is whether the comments are founded upon relevant evidence or a legitimate inference from the evidence. *State v. Martens*, 521 N.W.2d 768, 773 (Iowa 1994).

In addition,

counsel is precluded from using argument to vouch personally as to a defendant's guilt or a witness's credibility. This is true whether

the personal belief is purportedly based on knowledge of facts not possessed by the jury, counsel's experience in similar cases, or any ground other than the weight of the evidence in the trial."

*See State v. Williams*, 334 N.W.2d 742, 744 (Iowa 1983); *see also Martens*, 521 N.W.2d at 772 ("[V]ouching for a witness may induce the jury to trust the judgment of the prosecutor rather than their view of the evidence since the prosecutor's opinion carries the imprimatur of the Government. . . . An argument amounts to impermissible vouching if the jury could reasonably believe the prosecutor was expressing a personal belief in the credibility of a witness, either through explicit personal assurances or implicit indications that information not presented to the jury supports the witness.").

The State's evidence in this case was not overwhelming, and the credibility of the victim was central to the case. However, based on this record, we cannot determine whether Smith has proven his claim of ineffective assistance. We are unable to ascertain at this time whether defense counsel's silence was the result of a reasonable trial strategy or whether it was due to inattention. *State v. Fountain*, 786 N.W.2d 260, 266 (Iowa 2010) ("[C]laims of ineffective assistance involving tactical or strategic decisions of counsel must be examined in light of all the circumstances to ascertain whether the actions were a product of tactics or inattention to the responsibilities of an attorney . . . ." (alteration in original) (citation omitted)). "If the challenged actions of counsel implicate trial tactics or strategy, we will not address the issue until the record is fully developed." *State v. Clay*, 824 N.W.2d 488, 500 (Iowa 2012). In addition, if counsel's failure to object was a conscious trial tactic or strategy, based on this record, we are unable to determine "if such tactic or strategy was reasonable,

under prevailing professional norms." *See id.* at 501. We therefore preserve Smith's prosecutorial misconduct claims for postconviction relief.

**V. Conclusion**

We conclude the district court did not abuse its discretion in denying Smith's motion for a new trial based on juror misconduct and juror bias. However, we preserve for postconviction relief Smith's claims regarding counsel's failure to raise the juror misconduct and bias issue under the respective state and federal constitutional provisions, and we also preserve Smith's claim that his trial counsel was ineffective in failing to object to what he claims are instances of prosecutorial misconduct. Smith's conviction is affirmed.

**AFFIRMED.**