# IN THE COURT OF APPEALS OF IOWA

No. 20-0860
Filed June 30, 2021

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**DAVID MOSES WELTMAN,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Johnson County, Chad Kepros, Judge.

David Weltman appeals his judgment and sentence for second-degree sexual abuse. **AFFIRMED.**

Gary Dickey of Dickey, Campbell & Sahag Law Firm, PLC, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Sheryl Soich, Assistant Attorney General, for appellee.

Heard by Vaitheswaran P.J., and Greer and Schumacher JJ.

**VAITHESWARAN, Presiding Judge.**

A jury found David Weltman guilty of second-degree sexual abuse in connection with a sex act performed on a child. Weltman contends (1) the evidence was insufficient to support the jury's finding of guilt; (2) the district court abused its discretion in admitting evidence of subsequent bad acts; (3) the prosecutor impermissibly vouched for the credibility of the child witness; and (4) the district court abused its discretion in admitting expert testimony on grooming behavior and children's demeanor.

## I.    *Sufficiency of the Evidence*

The jury was instructed the State would have to prove the following elements of second-degree sexual abuse: "1. On or about July 1, 2018 through March 31, 2019; [Weltman] performed a sex act upon [a boy]; and 2. [Weltman] performed the sex act while [the boy] was under the age of 12 years."[1] The jury was further instructed:

> "[S]ex act" means any sexual contact:
> 1. By penetration of the penis into the vagina or anus.
> 2. Between the mouth of one person and the genitals of another.
> 3. Between the genitals of one person and the genitals or anus of another,
> 4. Between the finger or hand of one person and the genitals or anus of another person,
> 5. Or by a person's use of an artificial sex organ or substitute for a sex organ in contact with the genitalia or anus of another.
> You may consider the type of contact and the circumstances surrounding it in deciding whether the contact was sexual in nature.
> In determining whether the act was sexual in nature, you should consider the context and circumstances of the act including

---

[1] The State moved to amend the trial information to broaden the time frame. The record does not contain an order granting the motion to amend. However, the prosecutor's closing argument and the jury instruction reflect the broadened time frame.

but not limited to the relationship between the [d]efendant and the alleged victim; whether anyone else was present; the length of the contact; the purposefulness of the contact; whether there was a legitimate, nonsexual purpose for the contact; where and when the contact took place; and the conduct of the [d]efendant and alleged victim before and after the contact.

You may also consider whether the contact was made to arouse or satisfy the sexual desires of the [d]efendant or the alleged victim. However, the lack of such motivation would not preclude a finding of sexual abuse where the context in which the contact occurred showed the sexual nature of the contact.

Weltman argues the evidence was insufficient to prove he committed a sex act. He asserts certain evidence was inadmissible and, "[w]ith the inadmissible evidence presented at trial peeled away, the remaining record is legally insufficient to sustain [his] conviction." While the argument is appealing at first blush, we are required to consider inadmissible as well as admissible evidence in evaluating the sufficiency of the evidence. *See State v. Dullard*, 668 N.W.2d 585, 597 (Iowa 2003). That said, the evidence Weltman challenges is admissible, as discussed below. Accordingly, we would not peel away any of the evidence, even if we could.

Our review of a challenge to the sufficiency of the evidence is for substantial evidence. *See State v. Ernst*, 954 N.W.2d 50, 54 (Iowa 2021). "We consider all evidence . . . in the light most favorable to the State, 'including legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence.'" *Id.* (citation omitted).

A reasonable juror could have found the following facts. Weltman taught Hebrew lessons at a Jewish center in Iowa City, Iowa. A nine-year-old boy and his friend were enrolled in a class with Weltman. The boy testified that Weltman "did something bad to" him. Weltman often played a "placement" game with the children, in which Weltman "would usually pick [the children] up and put [them]

somewhere, and then the other one would say where [they] were." One day, the boy was in Weltman's office when Weltman "picked [him] up, upside down and took [him] into the storage room and put his hands under [his] underwear and touched [his] penis." The boy was wearing sweat pants over his underwear. The prosecutor asked the boy, "Is there any doubt in your mind that [Weltman's] hand touched your penis that day?" The boy responded, "No." The boy did not immediately tell anyone about the episode because he "thought it was an accident."

The boy's mother testified that, although she went to the Jewish center with her son, she was not able to observe the boy "during the actual lesson because they would be in [Weltman's] office or the library." As time passed, she became friends with Weltman. On one occasion, she mentioned her plan to take her daughter to Israel over spring break as a gift for her Bat Mitzvah. Weltman "immediately replied that was coincidental, that he was also going to Israel for spring break." Some months later, Weltman suggested, "[W]ouldn't it be a good idea to bring [her son] on the trip, too, that he would get a lot out of it, and since [Weltman] was already teaching and mentoring him he could continue that in Israel." Later, Weltman mentioned his "offer [was] still on the table." The mother changed her plans to include her son. She informed Weltman, who helped her buy airline tickets for the boy and "came up with a pretty detailed itinerary that involved" all of them flying together on the same flights.

Many of the mother's communications with Weltman were documented in text messages. In one early message, before it was decided the boy would accompany his mother and sister, Weltman stated, "[I]n case bringing [the boy] is

still something you're interested in, I have a draft itinerary for you for him (and all of us, when intersecting)." In another, he said, "I'm editing the itinerary online and I'll reshare once it's completed." In yet another, the mother shared that the boy was "very excited" to come on the trip "but also somewhat nervous about being separated from" her.

Weltman's carve-out of separate time with the boy hit a roadblock when, "on two occasions by phone [Weltman] invited [the boy] to come sleep over alone in his apartment so that he could feel more comfortable being away from [his mother] in preparation for travel in Israel." The mother refused to allow these overnight visits. She also informed Weltman that portions of his planned itinerary had to be changed so the boy "would always stay with" her. Weltman "was irritated" with this turn of events. The lodging was adjusted so that the boy would always be sleeping in his mother's room.

Weltman circumvented the change in one of the cities they visited. He told the mother "no one family could host all [of them], so he found one family to host [mother and daughter] and another family to host [Weltman and the boy]." The boy was not comfortable with the prospect of staying with Weltman, but he did. That night, Weltman told him to take off his clothes and take a shower. The boy did so. Weltman entered the bathroom while he was showering and looked at him. The incident made the boy feel uncomfortable. The boy later found out there was room for them at the other house.

After that night, the boy had "a full-on frantic panic attack" when he learned the next accommodation had two twin beds in two rooms. The mother moved one of the beds from Weltman's room to her room so the boy could stay with her.

While on the trip, Weltman played a game with the boy and his sister in which Weltman "was using [the boy] as a shield." Weltman "put [the boy] on his lap and he wouldn't let [him] go." The boy "didn't like it" and tried "to get off his lap." The boy stated he had been on Weltman's lap in the past, during Hebrew lessons.

On returning to Iowa City, the boy told his mother what transpired at the Jewish center. The prosecutor asked the boy, "[W]hat changed in your mind to make you want to tell your mom what had happened during the Hebrew lessons?" The boy responded, "The things that happened in Israel." The prosecutor continued, "And did that make you feel like it wasn't an accident?" The boy answered, "Yeah."

Substantial evidence supports the jury's finding that Weltman committed a sex act on the boy. *See State v. Hildreth*, 582 N.W.2d 167, 170 (Iowa 1998) ("[T]he alleged victim's testimony is by itself sufficient to constitute substantial evidence of defendant's guilt."); *State v. Lucier*, No. 15-1559, 2017 WL 4570531, at *4 (Iowa Ct. App. Oct. 11, 2017) (noting the child "identif[ied] the parts of [the defendant's] body that touched hers and the parts of her body that were touched by [the defendant.]"); *State v. Umana*, No. 11-0667, 2012 WL 4513859, at *9 (Iowa Ct. App. Oct. 3, 2012) (citing Iowa R. Crim. P. 2.21(3) ("Corroboration of the testimony of victims shall not be required.")). We affirm the finding of guilt.

## II. *Evidence of Other Crimes, Wrongs, Acts*

Iowa Rule of Evidence 5.404(b) states:

> (1) *Prohibited use.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that

> on a particular occasion the person acted in accordance with the character.
> (2) *Permitted uses.* This evidence may be admissible for another purpose such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, or lack of accident.

Courts use a three-step test to determine whether other crimes, wrongs, or acts evidence is admissible. First, the evidence must be relevant to a legitimate issue in dispute. *See State v. Putman*, 848 N.W.2d 1, 9 (Iowa 2014). Second, there "must be clear proof the individual against whom the evidence is offered committed the bad act or crime." *Id.* Third, the court must determine "whether the evidence's 'probative value is substantially outweighed by the danger of unfair prejudice to the defendant.'" *Id.* (citation omitted).

Prior to trial, Weltman filed a motion in limine seeking, in part, to exclude "information regarding alleged events that occurred after the date of the alleged incident" and, specifically, "events that allegedly occurred during a trip to Israel . . . as well as information related to the planning of the trip, information immediately leading up to that trip[,] and information immediately afterward." At a hearing on the motion, Weltman's attorney asserted "any discussion about events or actions or statements that occurred subsequent to the alleged criminal act . . . are not relevant and they are essentially just character evidence." The State responded that the jury could "consider the type of contact and the circumstances surrounding it to decide whether the contact was sexual in nature."

The district court denied that portion of the motion, as follows:

> The State intends to offer this evidence through the testimony of [the boy and his mother]. The court finds that [Weltman's] motion in this regard should be largely overruled. Evidence concerning the planning of the trip, sleeping arrangements, events occurring

between [Weltman and the boy and the boy's] reactions are relevant to several of the factors which the jury may be called upon to consider in determining whether the act alleged in this case was sexual in nature, including whether the contact was made to satisfy the sexual desires of [Weltman], the relationship between [Weltman] and the [boy], and the conduct of [Weltman] and [boy] before and after the contact. *See*, for example, *State v. Pearson*, 514 N.W.2d 452, 455 (Iowa 1994). Proof of these alleged acts is appropriate and probative for proper purposes other than general propensity to show intent (as related to whether the alleged act was sexual in nature, including whether the contact was made to satisfy the sexual desires of [Weltman]); to show preparation and planning (including that the alleged sex act, planning for the trip, developing relationships with the [boy's] family, and events alleged to have happened on the trip are argued to be typical grooming behaviors); and to show absence of mistake or accident (that the alleged sex act was consistent with other grooming behaviors, that the complaining witness was not mistaken, and that the alleged act was not accidental). Proposed evidence regarding [the boy's] demeanor and behaviors during the trip are intertwined with other aspects of the State's case, and are relevant to when and how he reported the alleged sex act, and also probative on the witness's credibility.

Weltman contends the district court abused its discretion in "admitting evidence of the post-offense trip to Israel." *Id.* at 7 (setting forth standard of review). In his view, the evidence "was not relevant to any issue in the case" and the court failed "to weigh the probative value [of] the Israel trip evidence against the danger of unfair prejudice."[2] The State responds that the evidence was relevant to establish "motive," "the sexual nature of the touch," and "lack of mistake or accident."

"Motive is the impetus that supplies the reason for a person to commit a criminal act." *Putman*, 848 N.W.2d at 10 (citation omitted). "Motive, like any other noncharacter purpose for which evidence might be offered, must have been at issue in the case." *Id.*

---

[2] Weltman does not appear to contest the "clear proof" requirement.

*Putman* involved a conviction for first-degree sexual abuse. In considering the State's assertion that other acts evidence was admissible to establish motive, the court stated, "[t]he perpetrator's motive for sexually abusing [the child] was not a legitimate or disputed issue in [the] case. The State was not required to prove Putnam's state of mind as an element of the crime." *Id.*

The State attempts to distinguish *Putman* on the ground that "the sexual nature of the contact" was not in dispute there, whereas it was in dispute here. Accordingly, the State asserts, Weltman's motive "became relevant to provide an explanation for the contact." We disagree.

As in *Putman*, Weltman's state of mind was not at issue. Under the definition of "sex act" given to the jury, the State simply needed to prove sexual contact between specified parts of Weltman's body and specified parts of the boy's body. *See State v. Cox*, 781 N.W.2d 757, 771 (Iowa 2010) (stating prior bad acts evidence was not relevant to motive or intent in a case involving second and third-degree sexual abuse because "the State was not required to prove specific intent, only that the alleged sexual conduct occurred" (citing *Lamphere v. State*, 348 N.W.2d 212, 217 (Iowa 1984) ("Second-degree sexual abuse . . . is not a specific intent crime . . . .")); *cf. State v. Goodson*, 958 N.W.2d 791, 801 (Iowa 2021) (in a case involving several crimes including third-degree sexual abuse, stating "[t]he prior acts evidence was relevant to show what motivated [the defendant] on that day"). Weltman's motive for making bodily contact with the boy was immaterial.

The State next asserts "Weltman's subsequent behavior evincing excessive and inappropriate interest in [the boy] was relevant to establish the sexual nature

of the touch." The State cites *State v. Munz*, 355 N.W.2d 576, 583 (Iowa 1984) for the proposition that rule 5.404(b) is not limited to prior bad acts.

In *Munz*, the defendant sexually abused a minor over a period of time. 355 N.W.2d at 579. The defendant later beat the minor. *Id.* Evidence of the beating was admitted. *Id.* On appeal of his conviction for third-degree sexual abuse, the defendant argued the beating occurred after the sex abuse with which he was charged and was inadmissible for that reason alone. *Id.* at 580. The supreme court disagreed. The court stated, "Evidence of the beating, if otherwise admissible as a 'similar act,' was not inadmissible on the ground it was subsequent to the acts charged." *Id.* at 582. The court continued, "It is not necessary . . . that the prior or subsequent act be identical; it is a similar act for these purposes if it is probative on the matter of the defendant's sexual desires." *Id.* at 583 (citation omitted). Although the beating was not a sex act, the court concluded it was "similar enough to the acts charged to create an inference as to the defendant's state of mind at the earlier times." *Id.* The court affirmed the admission of a subsequent act. *Id.* Based on *Munz*, we conclude the other acts could not be excluded solely because they occurred after the charged crime.

That leaves the question of whether the subsequent acts could be used to establish "the sexual nature of the touch." The *Munz* holding has been referred to as the "sex abuse exception" to the rule excluding other acts evidence. *See State v. Tharp*, 372 N.W.2d 280, 281 (Iowa Ct. App. 1985) ("*Munz* not only conceded Iowa still recognized the sex-abuse exception but determined that the exception should apply to subsequent as well as prior acts."). That exception, at least with respect to acts involving the same person, was reaffirmed in *State v. Reyes*, 744

N.W.2d 95, 102 (Iowa 2008). There, the court stated, "The existence of prior sexual abuse involving the same alleged perpetrator and victim . . . has relevance on the underlying criminal charge because it shows the nature of the relationship between the alleged perpetrator and the victim." *Reyes*, 744 N.W.2d at 102. And in *State v. Cox*, 781 N.W.2d at 768, the court again said, "Evidence of prior crimes against the same victim furnishes part of the context of the crime or is necessary to a full presentation of the case." (Citation and internal quotations omitted.) Because *Munz* makes no distinction between prior bad acts and subsequent bad acts, this case law is applicable to the other acts at issue here.

The jury instruction defining sex act was consistent with this case law. As noted at the outset, it stated, "In determining whether the act was sexual in nature, you should consider the context and circumstances of the act including but not limited to the relationship between the [d]efendant and the alleged victim." Weltman's request to have the boy spend the night with him before the trip, his creation of a separate itinerary for himself and the boy, his insistence on having the boy stay with him at a different location on one night of the trip notwithstanding the availability of housing at the mother's location, and the shower and shield incidents provided context and illuminated his relationship with the boy. The evidence was relevant for these purposes.

We are left with the State's assertion that the evidence was relevant to establish the absence of mistake or accident. As discussed, the boy initially thought Weltman's touch underneath his underwear was an accident. The events before and during the trip to Israel confirmed in his mind that the touch was not an accident. *See State v. Daugard*, No. 06-0537, 2007 WL 1062867, at *3 (Iowa Ct.

App. Apr. 11, 2007) (concluding the testimony of the defendant's coworkers concerning prior interactions with the victim and his work restrictions was "relevant because it cast doubt on his defense of mistake or accident").[3] We conclude the evidence was relevant to establish the absence of mistake or accident.[4]

We turn to the question of whether the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. *See* Iowa R. Evid. 5.403. Although the district court did not explicitly address this prong in its limine ruling, "the court necessarily considered the issue of balancing." *Reyes*, 744 N.W.2d at 100. Additionally, the court analyzed the question as follows in its ruling on Weltman's new trial motion:

> The probative value of this evidence was not outweighed by unfair prejudice. The evidence was important to prove that the act was not accidental and that it was sexual in nature, and the court is frankly hard pressed to see how the State could ever prove what it was required to prove without being allowed to present evidence outside of the couple of seconds in which the act of touching [the boy's] penis occurred.
>     The Court kept out a substantial amount of probative evidence . . . . But the evidence relating to the trip to Israel occurring fairly close in time after the sex act was highly probative and not unfairly prejudicial.

---

[3] Weltman argues the "mistake or accident" ground for admitting other acts evidence is not generally used by the State to bolster its own case but to rebut a claim of mistake or accident by the defendant. Rule 5.404(b) is not limited to that scenario.

[4] The district court also concluded the other acts evidence was "intertwined" with "other aspects of the State's case." On appeal, the State does not rely on the "inextricably intertwined" doctrine. *See State v. Nelson*, 791 N.W.2d 414, 419, 423 (Iowa 2010) ("[W]e will only allow such evidence [of other crimes, wrongs, or acts] to complete the story of what happened when the other crimes, wrongs, or acts evidence is so closely related in time and place and so intimately connected to the crime charged that it forms a continuous transaction.").

As the court stated, the need for the other acts evidence was strong, given the short duration of the touch and the child's belief it might have been an accident. On the other side of the coin, the child's descriptions of the other acts were short and to the point. While the mother's narrative was more detailed and descriptive, none of the acts she described would have prompted the jury to act with "overmastering hostility." *Id.* They were not so inflammatory that they would have evoked a "sense of horror." *See State v. White*, 668 N.W.2d 850, 855 (Iowa 2003). We discern no abuse of discretion in the district court's ruling admitting the other acts evidence.

### III.     *Prosecutorial Misconduct*

"A prosecutor may not . . . express or imply his or her personal belief in the truth or falsity of the testimony of a witness." *State v. Martens*, 521 N.W.2d 768, 772 (Iowa Ct. App. 1994). "[V]ouching for a witness may induce the jury to trust the judgment of the prosecutor rather than their view of the evidence since the prosecutor's opinion carries the imprimatur of the Government." *Id.* "An argument amounts to impermissible vouching if the jury could reasonably believe the prosecutor was expressing a personal belief in the credibility of the witness, either through explicit personal assurances or implicit indications that information not presented to the jury supports the witness." *Id.* To prevail on a prosecutorial-misconduct claim, a defendant must prove misconduct and must prove "misconduct resulted in prejudice to such an extent that the defendant was denied a fair trial." *State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003).

During her closing argument, the prosecutor stated:

> [The boy] got the privilege of coming to tell you, 13 strange adults that he doesn't know, and he walked in here and he told you the story, he swore to tell the truth, and *the State believes that he did tell you the truth*. And so based only on that, the State submits you could find [Weltman] guilty.

(Emphasis added.) Weltman contends the prosecutor improperly vouched for the boy's credibility. The State responds that Weltman did not preserve error. We assume without deciding that Weltman preserved error on his challenge to this statement, which was raised in the district court, albeit belatedly.[5] We proceed to the merits of that statement.

The statement made by the prosecutor might appear to constitute impermissible vouching for the boy's credibility. However, a prosecutor's similar statement—"You know [the victim] is not lying,"—was held not to constitute prosecutorial misconduct because it was tied to the evidence. *See State v. Carey*, 709 N.W.2d 547, 556 (Iowa 2006); *see also State v. Williams*, 334 N.W.2d 742, 744–745 (Iowa 1983) (concluding the prosecutor "approached the line but did not cross it" when he made statements such as "I also think it is clear that [a woman] was subjected to sexual abuse"); *State v. Lindsey*, No. 10-1812, 2011 WL 6076544, at *3–4 (Iowa Ct. App. Dec. 7, 2011) (concluding the prosecutor's statements, "The incidents that are alleged to have occurred, and I believe did occur" and, "I think [the child's] testimony is going to hold up," when viewed in context, did not amount to prosecutorial misconduct). In light of these holdings, we conclude the statement did not amount to prosecutorial misconduct.

---

[5] Other statements Weltman challenges on appeal were not mentioned in the district court and will not be discussed.

## IV.    Expert Witness Testimony

The State called an expert witness, who testified generally about grooming activities by abusers and delayed reporting of sex abuse. Weltman contends the "testimony went beyond explaining concepts relevant to the jury's determination of the issue in dispute—whether or not [he] touched [the boy's] penis." In his view, "the State used [the expert] testimony for the purpose of 'profiling' [him] as a child molester." Weltman also asserts the district court "abused its discretion in allowing [the expert] to testify about the demeanors of child sex abuse victims."

The supreme court recently addressed the State's use of an expert in a case of second-degree sexual abuse involving a minor. *See State v. Leedom*, 938 N.W.2d 177, 185 (Iowa 2020). The expert "testified about misconceptions about child sexual abuse, reasons for delayed disclosure of abuse, information about grooming processes, and how children often lack the capacity to describe when or how often such abuse occurred." *Id.* The court stated, "Expert testimony in child sexual abuse cases can be very beneficial to assist the jury in understanding some of the seemingly unusual behavior child victims tend to display." *Id.* at 192 (quoting *State v. Dudley*, 856 N.W.2d 668, 675 (Iowa 2014)). At the same time, the court cautioned, "Experts may express general opinions but may not directly comment on the veracity of the child victim." *Id.* The court concluded the expert in that case "did not vouch for" the child's credibility. *Id.* at 193. The court characterized the testimony as "general in nature describing why children delay disclosure, the grooming process, why children have an inability to recall specific dates, and the possibility that others can be in the room when abuse occurs." *Id.* The court stated the expert's "generalized testimony" was "permissible under our precedent." *Id.*

The expert testimony in this case was no different. The expert did not acquire information about the boy before testifying, did not opine about the boy's truthfulness, did not suggest his behavior was consistent with the behavior of abuse victims, and did not connect the boy's experience to the information relayed in his testimony. *See id.* Instead, he spoke in general terms about the concepts of grooming and delayed reporting. His testimony did not run afoul of our precedent.

The same holds true for Weltman's contention that the expert inappropriately discussed the demeanor of sexual abuse victims. The expert did not tie his general comments to the demeanor of the boy. As the State notes, the testimony was "textbook proper under Iowa law." *See State v. Jaquez*, 856 N.W.2d 663, 666 (Iowa 2014) ("We allow an expert witness to testify generally that victims of child abuse display certain demeanors.").

We affirm Weltman's judgment and sentence for second-degree sexual abuse.

**AFFIRMED.**

Greer, J., concurs; Schumacher, J., concurs specially.

**SCHUMACHER, Judge** (concurring specially)

I concur with the majority's well-analyzed opinion affirming David Weltman's judgment and sentence for second-degree sexual abuse. I write specially to highlight concerns with the statement of the prosecutor in closing arguments that vouched for the credibility of a witness, specifically the complaining child witness. The prosecutor vouched for the witness in the only statement preserved for this court's appellate review.[6] During the closing argument, the prosecutor stated:

> [The boy] got the privilege of coming to tell you, 13 strange adults that he doesn't know, and he walked in here and he told you the story, he swore to tell the truth, *and the State believes that he did tell you the truth.*
> *And so based only on that, the State submits you could find* [*Weltman*] *guilty.*

(Emphasis added.)

A prosecutor "is entitled to some latitude during closing argument in analyzing the evidence admitted in the trial." *State v. Phillips*, 226 N.W.2d 16, 19 (Iowa 1975). Moreover, a prosecutor may argue the reasonable inferences and conclusions to be drawn from the evidence. *Id.* A prosecutor may not, however, express his or her personal beliefs. *Id.*

> The key point is that counsel is precluded from using argument to vouch personally as to a defendant's guilt or a witness's credibility. This is true whether the personal belief is purportedly based on knowledge of facts not possessed by the jury, counsel's experience in similar cases, or any ground other than the weight of the evidence in the trial. A defendant is entitled to have the case decided solely on the evidence.

---

[6] This is the sole statement preserved for appellate review. Weltman argues that the vouching was not isolated, nor was it inadvertent. Instead, it "was marched in like an army with banners, and trumpets blaring, escorted and emphasized by the attorney for the State." *See State v. White*, No. 07-0664, 2009 WL 776529, at *4 (Iowa Ct. App. Mar. 26, 2009). However, the other statements highlighted by Weltman have not been preserved for appellate review.

*State v. Williams*, 334 N.W.2d 742, 744 (Iowa 1983); *accord State v. Martens*, 521 N.W.2d 768, 772 (Iowa Ct. App.1994) (stating, "vouching for a witness may induce the jury to trust the judgment of the prosecutor rather than their view of the evidence since the prosecutor's opinion carries the imprimatur of the Government"); *Beaugureau v. State*, 56 P.3d 626, 632 (Wyo. 2002) (observing that when a prosecutor asserts his personal opinions, "the jury might be persuaded not by the evidence, but rather by a perception that counsel's opinions are correct because of his position as prosecutor").

As the majority highlighted, in *Williams*, a prosecutor's similar statement was held to "approach the line but not cross it," referencing a prosecutor's statement, "I think it is clear that [a woman] was subjected to sexual abuse." 334 N.W.2d at 744–45. In the instant case, the prosecutor vouched for the child witness, stating to the jury, "the State believes he told you the truth." However, Weltman is not entitled to a new trial based on the single statement alone, as such statement does not automatically prejudice a defendant's right to a fair trial. Under these facts, Weltman's right to a fair trial was not prejudiced.

To show a denial of due process, the defendant must establish the prosecutor's misconduct deprived the defendant of a fair trial. *State v. Graves*, 668 N.W.2d 860, 876 (Iowa 2003). There are many components of a fair trial. *See generally* 21A Am. Jur. 2d *Criminal Law* § 998, at 259–60 (1998). The aspect of a fair trial implicated in the present case is the accused's right "to have his or her guilt or innocence determined solely on the basis of the evidence introduced at trial." *See id.* at 260. This right is threatened "by any incident likely to prejudice

the jury." 21A Am. Jur. 2d *Criminal Law* § 1004, at 265; *accord* 75 Am. Jur. 2d *Trial* § 192, at 418 (stating "the very heart of a fair trial embodies a disciplined courtroom where an accused's fate is determined solely through the exercise of calm and informed judgment"). As applied to the present case, we must determine whether "there is a reasonable probability the prosecutor's misconduct prejudiced, inflamed or misled the jurors so as to prompt them to convict the defendant for reasons other than the evidence introduced at trial and the law as contained in the court's instructions." *Graves*, 668 N.W.2d at 877. In making this determination we consider the following factors: "(1) the severity and pervasiveness of the misconduct; (2) the significance of the misconduct to the central issues in the case; (3) the strength of the State's evidence; (4) the use of cautionary instructions or other curative measures; and (5) the extent to which the defense invited the misconduct." *Id.*

Weltman has failed to establish a denial of a fair trial based on this isolated statement. The prosecutor's statement in closing arguments does not rise to the level of a due process violation as it occurred in isolation. The question of whether this statement, along with other statements of the prosecutor contained in the record, creates prejudice has not been preserved for our review. The statement in closing arguments preserved in the motion for a new trial, in isolation, did not violate defendant's right to a fair trial. The district court instructed the jury as to the non-evidentiary nature of statements of counsel.[7] However, the exercise of

---

[7] Jury instruction five contained the following language: "The following are not evidence:
    1. Statements, arguments, questions, and comments by the lawyer.
    2. Objections and rulings on objections.

caution is necessary in the zealous-advocate role concerning witness credibility, particularly where the truthfulness of the witness is central in the State's prosecution.

---

3. Testimony I told you to disregard.
4. Anything you saw or heard about this case outside the courtroom."